# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| LINDA JOHNSTONE and L.D. by and through her mother, LINDA JOHNSTONE, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiffs<br><br>vs.<br><br>CROSSCOUNTRY MORTGAGE, LLC,<br><br>    Defendant. | Case No. 1:22-cv-01111 |

## SECOND AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1. As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. Indeed, the Fourth Circuit has recognized that "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection

Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. Plaintiffs Linda Johnstone as the owner of the telephone line and L.D., the individual who was sent the telemarketing calls, by and through her mother, Linda Johnstone

("Plaintiffs")[1] bring this action under the TCPA alleging CrossCountry Mortgage, LLC ("CrossCountry"), sent her and other putative class members pre-recorded telemarketing calls and telemarketing calls to numbers on the National Do Not Call Registry for purposes of promoting their goods and services without their prior express written consent.

6. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

7. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

8. Plaintiff Linda Johnstone is the owner of the cellular telephone line that received the calls at issue.

9. Plaintiff L.D. is the minor child of Linda Johnstone.

10. Defendant CrossCountry Mortgage, LLC is a limited liability company with its principal place of business in this District.

## Jurisdiction & Venue

11. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiffs' claims arise under federal law.

12. The Defendant is subject to personal jurisdiction because it is based in this District.

---

[1] L.D. is the minor child of Linda Johnstone.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiffs were directed from and sent from this District.

## The Telephone Consumer Protection Act

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

15. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

18. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

19. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

20. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

21. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"
> 22. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<strong><u>Factual Allegations</u></strong>

23. CrossCountry provides mortgage services to consumers.

5

24. CrossCountry uses telemarketing to promote its products and solicit new clients.

25. These telemarketing efforts include the use of automated calls to send prerecorded messages.

26. Indeed, CrossCountry Mortgage has previously been sued alleging violations of the TCPA in *Katz v. CrossCountry Mortgage, LLC*, Civil Action No. 22-cv-925 (N.D. Oh.).

27. CrossCountry Mortgage has also previously been sued for violations of the TCPA in *Seri v. Crosscountry Mortgage, Inc.*, Civil Action No. 16-cv-1214 (N.D. Oh.).

28. Plaintiff L.D. is the minor child of Linda Johnstone.

29. Ms. Johnstone procured a cellular telephone for L.D., (805) 657-XXXX.

30. That telephone line is on Ms. Johnstone's account.

31. That telephone line was registered on the National Do Not Call Registry on July 8, 2019.

32. It is a residential telephone number.

33. It is a personal line, not used for any business purposes.

34. Despite this, in March of 2022 the Defendant contacted the Plaintiff's cellular telephone line twice.

35. One such call was on March 8, 2022.

36. During the March 8, 2022 call, the Plaintiff L.D. heard a pre-recorded message on the call.

37. While hearing the pre-recorded message, she placed the call on speaker phone, where her father could hear it.

38. The pre-recorded message talked about refinancing a mortgage.

6

39. Ms. Johnstone and her husband have no desire for telemarketers to contact their daughter's cellular telephone.

40. As such, the Plaintiff had the phone on speakerphone and her father subsequently informed the Defendant that the Plaintiff was not interested in their services.

41. The Caller ID for the call was 805-426-4824.

42. A call back to that Caller ID number identifies CrossCountry Mortgage.

43. Discovery has also revealed a call on March 2, 2022.

44. Prior to filing this lawsuit, the Plaintiffs' attorney contacted CrossCountry Mortgage about the calls.

45. CrossCountry Mortgage did not deny calling the Plaintiffs with a pre-recorded message.

46. Indeed, CrossCountry Mortgage makes bulk data purchases of consumer information from third parties.

47. Those third parties include iLeads.com, LLC.

48. iLeads.com, LLC has provided consumer data for telemarketing in other actions that have ended in substantial awards for consumers following allegations of improper telemarketing. *See Taylor v. Cardinal Financial Company, Limited Partnership*, Civil Action No. 21-cv-2744 (M.D. Fl.) (TCPA and state law related class action resolved for $7,200,000 for a class of 141,049 individuals provided by iLeads.com, LLC).

49. Indeed, the individual that iLeads.com, LLC associated with the Plaintiffs' telephone number has no relationship with the Plaintiffs.

50. Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.

51. Moreover, these calls injured Plaintiffs because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiffs and the class.

52. When Ms. Johnstone learned of the call, she found it especially offensive and concerning because in addition to it wasting her daughter's time and energy and phone, it invaded the privacy of her child and she does not want strangers making unsolicited calls attempting to speak to her daughter.

## Class Action Statement

53. Plaintiffs bring this action individually and on behalf of the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

54. Plaintiffs propose the following class definitions, subject to amendment as appropriate:

> **Robocall Class:** All persons within the United States: (1) to whose cellular telephone line (2) Defendant (or an agent acting on behalf of Defendant) placed a pre-recorded call (3) from four years prior to the filing of the case through the date of class certification (4) using an identical or substantially similar pre-recorded message used to place a telephone call to Plaintiffs.
>
> **National Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation call from or on behalf of CrossCountry Mortgage (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

55. Plaintiffs are members of the Classes and will fairly and adequately represent and protect the interests of the Classes as they have no interests that conflict with any of the class members.

56. Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

57. Plaintiffs and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

58. This Class Action Complaint seeks injunctive relief and money damages.

59. The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

60. Plaintiffs do not know the exact number of members in the Classes, but Plaintiffs reasonably believe class members will satisfy the numerosity requirement.

61. Indeed, a preliminary expert analysis by the Plaintiffs' expert has identified tens of thousands of potential class members.

62. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

63. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

9

64. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual class members.

65. There are numerous questions of law and fact common to Plaintiffs and to the proposed Classes, including but not limited to the following:

    (a) whether the Defendant used pre-recorded message to send calls;

    (b) whether multiple telemarketing telephone calls were made promoting the Defendant's goods or services to members of the National Do Not Call Registry Class;

    (c) whether Defendant made calls to Plaintiffs and members of the Classes without first obtaining prior express written consent to make the calls;

    (d) whether Defendant's conduct constitutes a violation of the TCPA; and

    (e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

66. Further, Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have no interests which are antagonistic to any member of the Classes.

67. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

68. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

10

69. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

70. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. 227(b) on behalf of the Robocall Class

71. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

72. The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Class delivering pre-recorded messages.

73. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

74. If the Defendant's conduct is found to be knowing or willful, the Plaintiffs and members of the Class are entitled to an award of up to treble damages.

75. Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for

11

emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(c))
### on behalf of the National Do Not Call Registry Class

76. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

77. The Defendant violated the TCPA and the Regulations by making two or more telemarketing calls within a 12-month period to Plaintiffs and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

78. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

79. Plaintiffs and Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

A. Injunctive relief prohibiting Defendant from calling cellular telephone numbers advertising their goods or services, except for emergency purposes, using a pre-record message in the future;

B. That the Court enter a judgment awarding Plaintiffs and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes; and

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request a jury trial as to all claims of the complaint so triable.

Respectfully submitted,

/s/ **Brian K. Murphy**
Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
misny@mmmb.com

Anthony Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln St, Suite 2400
Hingham, MA 02043
Phone: 617.485.0018
Fax: 508.318.8100
E-mail: anthony@paronichlaw.com

Charlotte Fernee Kelly (admitted *pro hac vice*)
Fernee Kelly Law
1228 E. 7th Ave., Suite 200
Tampa, FL 33605
Telephone: 813.315.3981
E-mail: charlotte@ferneekellylaw.com

Brian T. Giles (0072806)
The Law Offices of Brian T. Giles
1470 Apple Hill Road
Cincinnati, OH 45230
Telephone: 513.379.2715
E-mail: Brian@GilesFirm.com

*Counsel for Plaintiffs*