UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LINDA JOHNSTONE and L.D., *by and through her mother*, LINDA JOHNSTONE, *individually and on behalf of a class of all persons and entities similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>CROSSCOUNTRY MORTGAGE, LLC,<br><br>Defendant. | CASE NO. 1:22-cv-1111<br><br>JUDGE BRIDGET MEEHAN BRENNAN<br><br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

Before the Court is Plaintiffs' Motion for Leave to File a Second Amended Complaint. (Doc. No. 44.) The motion has been fully briefed. (Doc. Nos. 46, 47.) For the reasons stated herein, the motion is DENIED.

**I.    Background**

On June 23, 2022, Linda Johnstone commenced this class action lawsuit. (Doc. No. 1.) She alleged that Defendant contacted her cellular phone with a robocall prerecorded message. (*Id.* at 4.)[1] The Complaint proposed a nationwide class of persons who received the same or substantially similar robocall message from Defendant. (*Id.* at 5.)

On July 5, 2022, the parties filed a stipulated motion to extend the time to August 16, 2022, for Defendant to answer. (Doc. No. 6.) The Court granted that motion by docket entry the following day. (*See id.*)

On October 5, 2022, the parties filed a joint report of their planning meeting. (Doc. No.

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

1

13.) In it, the parties jointly proposed that the deadline for amending pleadings or adding parties be December 30, 2022. (*Id.* at 89.)

On October 13, 2022, Defendant filed a motion to bifurcate individual and class discovery. (Doc. No. 15.) That motion was fully briefed. (Doc. Nos. 16, 17.) On January 24, 2023, the Court held a Case Management Conference and heard oral argument from counsel from both parties on the motion to bifurcate. (*See* Minute Order, Jan. 24, 2023.)

> For the reasons stated on the record, the motion [was] GRANTED in part and DENIED in part. With counsel for both parties acknowledging that an individual discovery period would be brief, the bifurcation period [was] 45 days from the issuance of the Court's Scheduling Order. Plaintiff [was] authorized to issue third party preservation subpoenas, as necessary, for class discovery. The parties [were] ORDERED to submit a revised Rule 26(f) report by January 26, 2023[.]

(*Id.*)

On January 26, 2023, the parties filed a revised Rule 26(f) report, in which the "parties have agreed and submit the following dates to the Court:" (Doc. No. 22.)

| DEADLINE OR EVENT | PROPOSED DATE |
|---|---|
| Close of Phase 1 Individual Merits Discovery | March 31, 2023 |
| Deadline for Disclosure of Individual Expert Reports | April 14, 2023 |
| Deadline for Disclosure of Individual Rebuttal Reports | May 1, 2023 |
| Phase 1 Dispositive Motion Deadline | June 1, 2023 |
| Class Discovery Opens | 14 days from any ruling denying Summary Judgment Motion |
| Close of Class Discovery | 6 months after Class Discovery Opens |
| Deadline for Disclosure of Expert Reports | 14 days after close of Class Discovery |
| Deadline for Disclosure of Rebuttal Reports | 28 days after Deadline for Disclosure of Expert Reports |
| Close of Expert Discovery | 30 days after Rebuttal Report deadline |
| Motion for Class Certification Deadline | 30 days after Expert Discovery Deadline |
| Recommended date for status conference | June 2023 |

2

(Doc. No. 22 at 192.) Notably, that report made no request to change or further extend the deadline for amendment of pleadings. (*See* Doc. No. 22.)

On February 2, 2023, the Court issued a Case Management Order. (Doc. No. 23.) It provided: "The pleadings shall be amended without leave of the Court and new parties shall be joined on or before February 15, 2023." (*Id.* at 194.)

On February 7, 2023, Defendant moved for judgment on the pleadings on the ground that the Complaint showed no injury in fact, arguing that the Court therefore lacked Article III jurisdiction. (Doc. No. 24.) On February 21, 2023, "Plaintiff Linda Johnstone" filed an opposition brief to that motion and asserted Defendant "violated the TCPA because it made a prerecorded phone call *to her* about mortgage refinancing without *her* prior express written consent." (Doc. No. 28 at 217 (emphasis added).) On March 7, 2023, Defendant replied in support of the motion for judgment on the pleadings. (Doc. No. 31.)

On March 24, 2023, while its motion on the pleadings was still pending, Defendant filed an "emergency" motion to dismiss for lack of Article III subject-matter jurisdiction. (Doc. No. 32.) In it, Defendant pointed out:

> Plaintiff and Plaintiff's daughter provided testimony at their depositions which proves . . .
>
> • The single phone call at issue was neither received nor picked up by the Plaintiff.
>
> • Plaintiff's daughter is the regular and exclusive user of the phone and phone number. Plaintiff's daughter picked up the phone call. Plaintiff was not anywhere near Plaintiff's daughter when Plaintiff's daughter answered the call.
>
> • Plaintiff has no direct knowledge of the phone call, the message that was played, or how long it lasted.

(Doc. No. 32-1 at 248-49.) On April 5, 2023, the Court conducted a status conference to address the emergency motion. There, "Defense counsel . . . raised concerns about factual inaccuracies

3

in Plaintiff's complaint. Plaintiff's counsel acknowledged concerns related to the Complaint and stated they will be cured in an amended complaint, should the Court grant permission to file an amended complaint." (Minute Order April 5, 2023.)

On April 6, 2023, Linda Johnstone filed a motion for leave to file an amended complaint, in which she and her daughter both would be named plaintiffs. (Doc. No. 34.) That motion was fully briefed. (Doc. Nos. 35, 36.) On June 9, 2023, the Court granted Plaintiffs leave to file their amended complaint. (Doc. No. 37.) "Plaintiff [was] granted three (3) business days to electronically file her Amended Complaint. Defendant's Motion for Judgment on the Pleadings (Doc. No. 24) and Emergency Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 32) [were] DENIED as moot." (Doc. No. 37 at 478.)

On June 12, 2023, Plaintiffs filed their first amended complaint. (Doc. No. 38.) Two weeks later, Defendant answered the first amended complaint. (Doc. No. 39.) Class discovery continued.

On October 26, 2023, the Court held a status conference. (Minute Order Oct. 26, 2023.)

> The Court inquired and heard from counsel for both sides regarding the status of discovery and settlement discussions. Established deadlines [were] as follows: 12/22/2023, completion of class discovery; 1/5/2024, expert report(s) for the party bearing the burden of proof; 2/2/2024, responsive expert report(s); 3/4/2024, completion of expert discovery; 4/15/2024, submission of any motion for either class certification or summary judgment. By agreement of the parties, this matter [was] referred to Magistrate Judge James E. Grimes, Jr. to conduct a mediation as soon as practicable after 12/22/2023.

(*Id.*) No request was made to extend the expired deadline to seek leave to amend pleadings – and no extension was given. (*See id.*)

On the last day of class discovery, December 22, 2023, Plaintiffs filed their motion seeking leave to file a second amended complaint, the details of which are addressed herein.

4

(Doc. No. 44.) On January 5, 2024, Defendant filed an opposition brief. (Doc. No. 46.) On January 12, 2024, Plaintiff filed a reply. (Doc. No. 47.)

## II. Law and Analysis

Plaintiffs' motion is framed as being "made pursuant to Fed. R. Civ. P. 15(a)(2)." (Doc. No. 44 at 519; *see also id.* at 521.) According to Plaintiffs, that rule "requires that '[t]he Court should freely give leave when justice so requires.'" (Doc. No. 44 at 521 ¶ 14 (partially quoting Fed. R. Civ. P. 15(a)(2).) Plaintiffs acknowledge that "[w]hether this is an instance where 'justice so requires' is a question committed to the district court's sound discretion." (*Id.*)

This motion is subject to the Court's discretion. *See Leary v. Daeschner*, 349 F.3d 888, 904 (6th Cir. 2003) ("A district court's decision is to be afforded great deference" with respect to granting leave to amend.) Here, Plaintiffs rely on an incorrect legal standard.

### A. Rule 15(a)(2)

Rule 15(a) generally governs amendments to pleadings and provides that after a responsive pleading is filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This rule has been characterized as reflective of "a liberal policy of permitting amendments." *Langley v. Credit Suisse First Bos. Corp.*, 89 F. App'x 938, 943 (6th Cir. 2004) (quoting *Ellison v. Ford Motor Co.,* 847 F.2d 297, 300 (6th Cir. 1988)).

"Nevertheless, the party requesting leave to amend must 'act with due diligence if it wants to take advantage of the Rule's liberality.'" *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (quoting *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995)). Moreover, the Sixth Circuit instructs that a "motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes,

5

results in undue delay or prejudice to the opposing party, or would be futile." *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)).  In determining what constitutes prejudice, the Court considers whether the addition of the new claim and resulting new class would: require the Defendant to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the Plaintiffs from bringing a timely action in another jurisdiction. *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994).

> **B.** **Rule 16**

"[W]hen a party seeks to amend its pleadings or join additional defendants *after* the expiration of scheduling order deadlines, it must show good cause under Rule 16(b)." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020) (emphasis added).  The Sixth Circuit explains:

> The question . . . is whether the district court abused its discretion in denying Plaintiffs' motion for leave to amend their complaint because the motion was filed after the Rule 16 deadline for amendments had passed.  The answer is decidedly "no," because the Plaintiffs failed to show good cause and because [defendant] would suffer undue prejudice.  This is so even though the clear language of Rule 15 states that leave to amend "shall be freely given." Fed. R. Civ. P. 15(a).  Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a).  Our previous decisions suggest that the district court also is required to evaluate prejudice to the opponent before modifying the scheduling order.  Thus, in addition to Rule 16's explicit "good cause" requirement, we hold that a determination of the potential prejudice to the nonmovant also is required when a district court decides whether or not to amend a scheduling order.

*Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (citations omitted); *see also Inge v. Rock Fin. Corp.*, 388 F.3d 930, 934 (6th Cir. 2004) ("Fed. R. Civ. P. 16(b) requires a district court to enter a scheduling order for matters such as amendments to the pleadings and indicates that the order 'shall not be modified except upon a showing of good cause.'").

6

"'The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet' the scheduling order's requirements, but courts also consider 'possible prejudice to the party opposing the modification.'" *Garza,* 972 F.3d 853, 879 (quoting *Inge*, 281 F.3d at 625). "'[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (citation omitted).

### C. Application to the Motion

Plaintiffs' motion for leave to amend makes no mention of Rule 16 or the 'good cause' standard. (*See* Doc. No. 44.) That void alone would warrant denial of the motion. *See Inge v. Rock Fin. Corp.*, 388 F.3d 930, 937 (6th Cir. 2004). But because Plaintiffs touched on the correct standard in their reply (Doc. No. 47), the Court will consider whether Plaintiffs' arguments in reply meet the "good cause" standard.

#### 1. Characterization of the Proposed Amendment

The motion begins: "Plaintiffs' second amended complaint contains no new factual allegations but simply adds additional legal claims on behalf of the putative class and the factual underpinning required for that claim." (Doc. No. 44 at 519.)

Plaintiffs' disavowal of new fact allegations is misleading.[2] The proposed second amended complaint adds, among other things, the following allegations:

---

[2] The proposed second amended complaint contains lengthy allegations regarding history and politics. (*E.g.,* Doc. No. 44-2 at ¶¶ 2-4, 15-17.) The motion reads as if those do not 'really count – *i.e.*, that pleading matters of legislative history or public sentiment is different than alleging facts. Plaintiffs cite no legal authority to frame their assumption. In any event, it is quite possible for a plaintiff to allege points of history, politics, or law that are not accurate. A defendant must sift through those pleaded characterizations and decide whether or not to admit them. So at least for purposes of weighing prejudice to a defendant, all new material in a proposed amended complaint goes onto the scale. *See generally Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973) (holding that "a trial court is required to take into

7

> 31. [Plaintiff's] telephone line was registered on the National Do Not Call Registry on July 8, 2019.
>
> 32. It is a residential telephone number.
>
> 33. It is a personal line, not used for any business purposes.

(Doc. No. 44-2 at 547.)

> 61. Indeed, a preliminary expert analysis by the Plaintiffs' expert has identified tens of thousands of potential class members.

(*Id.* at 550.)

> 77. The Defendant violated the TCPA and the Regulations by making two or more telemarketing calls within a 12-month period to Plaintiffs and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

(*Id.* at 553.)

There can be no question that new facts are alleged in the above excerpts from the proposed second amended complaint. The issue here is not 'how much is too much' new material to constitute a burden or prejudice. Rather, the concern is that when a party asks the Court to exercise its discretion, candor is crucial. The Sixth Circuit has affirmed the denial of a motion for leave to amend where a moving plaintiff "attempted to characterize" its proposed amendment in a benign manner, yet the court found that "this characterization is undeniably false." *See Leary v. Daeschner*, 349 F.3d 888, 908 n.26 (6th Cir. 2003).

Notably, Plaintiffs did not include a redline to show additions and deletions in the proposed second amended complaint. In the absence of a redline, the characterization by counsel

---

account any prejudice that the party opposing the motion to amend would suffer").

8

in the motion papers takes on greater importance – since that is all that was provided to inform the Court about the nature and scope of the changes.

The Court finds that Plaintiffs omitted the correct legal standard, did not submit a redline to show the precise changes requested, and misstated the nature and scope of the amendments requested.

### 2. Delay

Plaintiffs' present motion and proposed second amended complaint were filed eight months after their motion for leave to file the first amended complaint. (*See* Doc. Nos. 34, 44.) Plaintiffs offer a dubious explanation regarding the discovery of their proposed Do Not Call registry claim. Plaintiffs' reply brief argues:

> It is true that Plaintiffs were previously aware that the phone number at issue was on the National Do Not Call Registry, but at the time the original Complaint was filed, Plaintiffs did not know that they received more than one call, a prerequisite to bringing a claim for violation of the TCPA's Do Not Call Provisions. *See* 47 U.S.C. § 227(c)(5). That was not revealed until Cross Country produced a record of a second call in discovery.

(Doc. No. 47 at 625-26.)

Plaintiffs thus contend that they did not know about their DNC registry claim in June 2022 when they first filed this case. However, the more salient inquiry is whether Plaintiffs knew enough to include a DNC registry claim on June 12, 2023, when Plaintiffs were granted leave to file the First Amended Complaint. (*See* Doc. Nos. 34-38.)

Plaintiffs knew about their own affirmative decision to list their number on the DNC registry. On reply they acknowledge that one other piece of information was needed to learn that Plaintiffs possessed a DNC registry cause of action: *i.e.*, that their number was called twice. (Doc. No. 47 at 625-26.)

9

On April 6, 2023, Plaintiffs filed a motion for leave to file their First Amended Complaint.  (Doc. No. 34.)  That motion was granted on June 9, 2023.  (Doc. No. 37.)  Plaintiffs alleged:

> [I]n March of 2022 the Defendant contacted the Plaintiff's cellular telephone line *twice*.  One such call was on March 8, 2022.  * * *  A call back to that Caller ID number identifies CrossCountry Mortgage.  Discovery has *also revealed a call on* March 2, 2022.  Prior to filing this lawsuit, the Plaintiffs' attorney contacted CrossCountry Mortgage about the call*s*.

(Doc. No. 34-1 at 336 ¶¶ 25-35 (emphasis added); *see also* Doc. No. 38 at 483.)

Plaintiffs' First Amended Complaint reveals that they have known about the occurrence of two calls since that proposed pleading was filed on April 6, 2023.  (*Id*.)  The motion confirms as much: "During [the] bifurcated discovery period, Plaintiffs learned that CrossCountry's records indicate that it made two calls to the Plaintiffs' telephone line."  (Doc. No. 44 at 520.)  And on reply, Plaintiffs admit that already "Plaintiff Johnstone has amended her Complaint once *after* the time the second call was disclosed . . . ."  (Doc. No. 47 at 626 (emphasis added).)

Plaintiffs do not offer a reasonable justification for their failure to seek leave to plead a DNC registry claim prior to the filing of the instant motion on December 22, 2023.  Plaintiffs have acknowledged that they knew of having been called twice by Defendant at least eight months prior to filing the instant motion.  (Doc. No. 34-1 at 336 ¶¶ 25-35.)  Their failure to move for leave to file a second amended complaint for over eight months indicates undue delay and a lack of diligence.

### 3. iLEADS

The present motion refers to Defendant's purchase of data from a company called iLeads.  (Doc. No. 44 at 521.)  Plaintiffs say that in other litigation iLeads was found to have caused or produced TCPA violations which resulted in class actions liability.  (*Id.*)

10

The discussion of iLeads in the present motion is misplaced.  It does not explain the reason for the proposed second amendment, nor does it justify the delay.  Plaintiffs have known about iLeads since before they sought leave to file their first amended complaint, which had alleged the same basic critique of iLeads.  (*Compare* Doc. No. 38 at 483-84 *with* Doc. No. 44 at 521.)

The motion does not show that information from iLeads revealed an otherwise unknown DNC registry claim.  As stated above, the key facts (Plaintiffs' own DNC registration and receipt of two or more calls from Defendant) were known at least since April 6, 2023.  It may be that iLeads data or other discovery documents helped Plaintiff understand *why* or *how* Defendant called them twice.  But such insight was not required to plead a DNC registry claim.

Finally, Plaintiffs point to an expert report served on December 20, 2023, which they say shows "484,788 calls to 82,488 numbers on the Do Not Call list."  (Doc. No. 44 at 520 ¶ 9.)  That Plaintiffs hired an expert to conduct this analysis shows that Plaintiffs' counsel knew well in advance of December 2023 of a potential DNC registry class claim.  Yet the motion provides no showing of diligence and no explanation for the delay in seeking in leave to add that claim.

Importantly, Plaintiffs knew that the scheduling order deadline to amend pleadings had already passed.  (*See* Doc. No. 23; Doc. No. 34 at 329 ¶ 11.)  Instead of promptly seeking leave to amend to include a DNC registry claim, Plaintiffs opted instead to have an expert analyze data to gauge the size of a potential class of similar claimants.  Plaintiffs did not provide legal authority or any reasoned argument as to why this would constitute good cause under Rule 16.

Because Plaintiffs submitted no evidence or argument to excuse or explain their dilatory failure to seek leave to add a DNC registry claim, the Court declines to exercise its discretion to permit the filing of the proposed second amended complaint.

### III. <u>Conclusion</u>

For the reasons stated above, Plaintiffs' Motion for Leave to File a Second Amended Complaint (Doc. No. 44) is DENIED.

**IT IS SO ORDERED.**

**Date:** April 9, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE