# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| LINDA JOHNSTONE and L.D., by and through her mother, LINDA JOHNSTONE, individually and on behalf of a class of all persons and entities similarly situated, | : : : : : : | Case No. 1:22-cv-01111-BMB<br><br>Judge Bridget Meehan Brennan |
| Plaintiffs, | : : | |
| v. | : : | |
| CROSSCOUNTRY MORTGAGE, LLC, | : : | |
| Defendant. | : | |

## MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Linda Johnstone and L.D. respectfully request that this Court (1) certify the proposed Class, (2) appoint Plaintiffs to serve as the Class Representatives, and (3) appoint Plaintiffs' lawyers as Class Counsel.

A memorandum in support follows.

                                                       Respectfully submitted,

                                                      **/s/ Brian K. Murphy**
                                                      Brian K. Murphy (0070654)
                                                      Jonathan P. Misny (0090673)
                                                      Murray Murphy Moul + Basil LLP
                                                      1114 Dublin Road
                                                      Columbus, OH 43215
                                                      Telephone: 614.488.0400
                                                      Facsimile: 614.488.0401
                                                      E-mail: murphy@mmmb.com
                                                                  misny@mmmb.com

## MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiffs Linda Johnstone and L.D. seek to certify the following Class:

> All persons within the United States whose cellular numbers are included on the "waterfall 2" portion of the class list attached as an exhibit to the expert report of Aaron Woolfson, or amendments thereto: (a) who received telemarketing calls from CrossCountry Mortgage, LLC; (b) promoting CrossCountry Mortgage, LLC's products or services; (c) on their cellular telephone numbers; (d) using an artificial or prerecorded voice, as indicated by the "IVR" field of the Five9 Dialer Logs; (e) at any time in between June 23, 2018 to April 15, 2024.

Expert analysis shows Defendant itself made at least 187,092 violative calls to 27,211 unique numbers, or Class members, including Plaintiffs. The proposed Class here is remarkably cohesive enough to warrant certification under Rule 23's requirements. Common questions of law and fact predominate across the class: all Class members received (1) prerecorded, (2) telemarketing calls, (3) to their cell phones. Defendant cannot contend that any of the calls were sent with requisite prior express written consent, nor can it contend that the calls were placed for emergency purposes. Accordingly, all Class members are entitled to statutory damages. Few cases present as appropriate a scenario for class certification as this one. This Class should be certified to rectify at trial the Class's injury in receiving prerecorded robocalls.

## LAW AND FACTUAL BACKGROUND

The TCPA regulates prerecord calls and makes it "unlawful" to "make any call" "using … [a] prerecorded voice" to any "telephone number assigned to a … cellular telephone service" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). And it provides a minimum of $500 in statutory damages for each violation. *Id*. at § (b)(3).

Defendant calls itself "one of the nation's largest and fastest growing retail mortgage lenders" and is licensed in all 50 states. *See About Us*, CROSSCOUNTRY MORTGAGE, https://crosscountrymortgage.com/about-us/ (last visited Apr. 15, 2024). Defendant continues to

1

use prerecorded message calls. Here, Defendant purchased "vintage" leads from a vendor, iLeads. (Deposition of J. Berger ("Berger Dep."), excerpts attached as Ex. A, 24:4-10.) These older leads are the dregs in the lead space and cost little. (*Id*. 24:17-18, 25:3-4.) Most of these leads lack the consent necessary to place calls using prerecorded voices. (*Id*. 62:15-63:5.) To make any sales using these subpar leads, Defendant used the Five9 autodialer to place millions of calls *en masse*. Defendant's call center, however, only has a finite number of agents. So, Defendant programmed its dialer to play a prerecorded message if an agent did not answer the call after two seconds. (*Id*. 119:10-22, 45:1-23.) This prerecorded message, termed an "abandoned call message," played whenever a call was made where an agent was not available. (*Id*. 47:18-48:1.) The message said it was from CrossCountry Mortgage and asked the called party to press 1 to speak with a loan specialist or to press 9 to opt out. (*Id*. 46:3-6.) And, to arrive at the conclusion that Plaintiffs were called using that message, Defendant relied upon its call logs. (*Id.* 46:16-47:1-2.) Plaintiffs' expert also relied upon those call logs.

    Common questions as to all Class members predominate here. There is no dispute that Defendant loaded the leads it bought into its dialer and that it programmed this dialer to play a prerecorded message if an agent did not answer the call after two seconds. There is no dispute that, after expert analysis removed any records containing any purported evidence of consent, the remaining records contain no evidence of consent. There are *at least* 187,092 illegal prerecorded robocalls to 27,211 unique cellular numbers. Even the damages due each class member is a common question. As common questions predominate, this case is ideal for class certification.

    Plaintiffs are also ideal representatives of the Class. Linda Johnstone resides in California and filed this class action on behalf of herself, her minor daughter, L.D., and all others similarly situated to hold Defendant to account for its illegal telemarketing practices. (Am. Compl., Doc.

2

38.) Specifically, Linda Johnstone alleges that she is the owner of the telephone line that she provides to L.D. for her use. (Declaration of L. Johnstone ("Johnstone Decl."), attached as Ex. B, ¶ 4.) Defendant telemarketed a minor child, L.D., by calling L.D.'s cell phone to pitch its useless mortgage services. (Doc. 38 ¶ 25-34.) Discovery ultimately revealed that Defendant was attempting to reach someone else but did nothing to ensure that it was calling with consent.

As the attached Declaration of Aaron Woolfson indicates, the data upon which Mr. Woolfson based his analysis consisted of various files containing records of calls placed by the Defendant. (Declaration of A. Woolfson ("Woolfson Decl."), attached as Ex. C, ¶ 23.) Mr. Woolfson removed any leads for which there was purported consent. No evidence has been produced to show that Linda Johnstone, who has denied providing consent, consented. (Johnstone Decl. ¶ 9, 10.)

## ARGUMENT

**A.     This case satisfies the Sixth Circuit's implied ascertainability requirement.**

Like other circuits, the Sixth Circuit has imposed an implied requirement of ascertainability in Rule 23. *See American Copper & Brass, Inc. v. Lake City Indus. Prods.,* 757 F.3d 540, 545 (6th Cir. 2014) (affirming certification of TCPA class finding that "fax numbers are objective data satisfying the ascertainability requirement"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012); *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008).

This case more than satisfies this modest requirement because not only is the class ascertainable, *the Class has already been ascertained.* Plaintiffs' expert, Aaron Woolfson, utilized objective criteria in Defendant's own calling records to identify Class members. Plaintiffs now seek to certify a class based on the second set of "waterfall" data analyzed by Mr. Woolfson, which revealed 187,092 prerecorded calls placed to 27,211 unique cellular telephone

3

numbers. Mr. Woolfson did so by cross-referencing Defendant's own partial production of calling records with consent data produced concurrently therewith, as well as other industry databases to identify cellular telephone numbers subject to the TCPA. (Woolfson Decl. ¶ 40-44.)

Other courts have held that nearly identical approaches satisfy the ascertainability requirement. *See Knutson v. Schwan's Home Serv.*, No. 3:12-CV-0964-GPC-DHB, 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013). Similarly, "[t]he Sixth Circuit has held that a fax log identifying recipients according to their fax number is sufficiently objective criteria to maintain a TCPA class action." *Innovative Acct. Sols., Inc. v. Credit Process Advisors, Inc.*, 335 F.R.D. 106, 113 (W.D. Mich. 2020). The Class definition here, just as in *Knutson* and *Innovative*, is based upon standardized data reflecting the same. As explained in his report, in addition to relying upon public databases, Mr. Woolfson relied upon Defendant's own data to determine which calls were sent to an Interactive Voice Response (IVR) path and thus were played a prerecorded message. (Woolfson Decl. ¶ 3.) The proposed Class therefore has been ascertained.

**B.    This case satisfies the requirements of Rule 23(a).**

A plaintiff seeking class certification must demonstrate he has satisfied the four threshold requirements of Rule 23(a). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14 (1997). In addition, a plaintiff must satisfy one of the three parts of Rule 23(b). This case satisfies the requirements of Rule 23(a)(1) (2), (3), and (4) because numerosity, commonality, typicality, and adequacy are met. The Sixth Circuit recently affirmed the grant of class certification in a TCPA case, confirming the legitimacy of Rule 23's application to TCPA claims. *See American Copper & Brass*, 757 F.3d at 540. "Class certification is normal in litigation under [the TCPA]." *Ira Holtzman, C.P.A. & Assoc. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). The Court's inquiry at class certification asks whether the requirements of Rule 23 are met, not whether a plaintiff

4

will ultimately prevail on the merits. *Amgen v. Conn. Ret. Plans*, 568 U.S. 455, 465-66 (2013).

1. <u>The numerosity requirement of Rule 23(a)(1) is satisfied because calling records identify 27,211 unique Class members.</u>

The numerosity requirement is easily satisfied here. For a proposed class to pass muster under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Here, Mr. Woolfson's expert report, which analyzed under 1 million calling records, identified 27,211 unique Class members, including Plaintiffs. (Woolfson Decl. ¶ 50.) It would be impractical to join all those persons.

2. <u>The commonality requirement of Rule 23(a)(2) is satisfied because all Class members suffered the same injury—prerecorded calls—and have common contentions—that Defendant sent prerecorded messages to their cellphones without evidence of consent.</u>

The commonality requirement dictates that the case have "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The bar for demonstrating commonality is low and does not require that all class members have perfect identity of questions of law or fact. Indeed, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The plaintiff seeking certification must only demonstrate that there is a common question central to the validity of the class's claims, the "truth or falsity" of the common answers to them will resolve the claims "in one stroke." *Id.* at 350. For the reasons below, this case satisfies the requirement.

Commonality is satisfied here because the Class all suffered a common injury in Defendant calling their respective cellular telephone numbers with prerecorded calls. *Id.* at 349. The Class's claims depend on three common questions capable of classwide resolution: *first*, did Defendant use prerecorded calls? *Second*, were those calls placed to cell phones protected by the TCPA? *Third*, has Defendant produced any evidence of consent to call those numbers? The answer to the first question is a resounding "yes," despite the counter-expert report proffered by

5

Defendant. First, when asked whether Plaintiffs received prerecorded calls, Defendant's 30(b)(6) representative stated that L.D. was played a prerecorded message. (Berger Dep. 46:3-6.) He further explained the Dialer's IVR functionality was programmed to play a prerecorded message if an agent did not answer the call after two seconds. (*Id*. 119:10-22, 45:1-23.) Defendant produced a copy of the voice talent prerecorded message recording in discovery, which directed the called party to press "1" to speak with a representative or press "9" to opt out of future calls. (Berger Dep. Ex. 3, attached as Ex. A-1.)

As Mr. Woolfson explained, and contrary to Defendant's expert report, "IVR is a technology that allows a computer to interact with humans through the use of voice and/or DTMF tones inputted via a telephone keypad. DTMF ('Dual Tone Multi Frequency') is the signal you generate when you press a telephone's touch keys." (Woolfson Decl. ¶ 8 n.6.) It logically follows that if any call was sent to an IVR path as indicated by Defendant's call logs and as confirmed by the declaration of Five9's 30(b)(6) representative Craig Westhusing, it would have to have played a prerecorded message because a human would have no way of knowing what touch tones to press to send them to a representative or to opt out of future calls without a recording informing them of the same, and no human could be on the call since humans cannot interpret touch tones. In any event, Defendant's expert report is a red herring because Defendant has produced a copy of the voice talent prerecorded message it admits the IVR would have played if an agent did not answer the call after two seconds. (Berger Dep. Ex. 3.)

The answer to the second question is also "yes." The calls were all placed to cell phones. We know this unchallenged fact because Mr. Woolfson used Defendant's own records to see what numbers were called and then cross-referenced those numbers against multiple reliable,

standard databases. (Woolfson Decl. ¶ 23.) Mr. Woolfson faithfully applied the data contained in authoritative databases of historical carrier assignments. (*Id*. ¶ 23 n.10, n.12.) The answer to the third question is "no." As explained below, *none* of the calls were placed with evidence of consent. Of the database of calls, Mr. Woolfson removed any records that had some evidence of purported consent in the form of a "Jornaya ID," which ended up removing 8,544 records. This resulted in 27,211 unique telephone numbers, or Class members, including Plaintiffs, which together received 187,092 calls as evidenced through the redacted dataset.

The Court can resolve this case using common proof, such as the calling records already analyzed. The answer to any legal claims will also rely on uniform legal analysis. And beyond sharing the same legal and factual questions, the TCPA is a statute uniquely suited to classwide adjudication. As compared to other class actions routinely certified, TCPA cases involve a single uniform legal question based on uniform records, as here. *See, e.g., Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* No. 3:12 CV 2257, 2014 U.S. Dist. LEXIS 166275, at *13 (N.D. Ohio Dec. 1, 2014).

The Class's claims rely on whether they can prove they received prerecorded messages to their cell phones from Defendant, the answer to which has a common answer in Defendant's own calling records. The Class's damages are similarly uniform, as the TCPA provides for statutory damages of $500 per call, which can be up to tripled if the Court determines, from the facts and circumstances of the case, that Defendant's violations were willful and/or knowing. There can be no question that commonality is satisfied here.

3. <u>The typicality requirement of Rule 23(a)(3) is satisfied because all Class members received identical calls without consent to their cell phones.</u>

The burden for demonstrating typicality is low and merely requires that the claims of the class representatives be typical of the claims of the class, in other words, that the plaintiff's

7

"injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 290 (N.D. Ohio 2007). Substantial identity between the operative facts of the representative plaintiff and the class in general is not necessary. *Rutherford v. Cleveland*, 133 F.3d 905 (6th Cir. 1998). If the representative plaintiff's claims arise from the same course of general conduct challenged on behalf of the class, and the representatives assert the same theories of relief, the plaintiff will, in proving their individual case, therefore also prove the case for absent class members. *Id.*

Typicality does not require that the representative plaintiff's claims be identical to other class members, only that they arise from the same events, and each makes similar legal arguments to show liability. *Id.* "[T]he claims of the named plaintiffs and the absent members must be typical, not identical or homogeneous." *Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-CV-00436, 2014 U.S. Dist. LEXIS 96695 (S.D. Ohio July 16, 2014); *see also Wagner Wellness*, 2014 U.S. Dist. LEXIS 166275, at *13 ("The 'typicality' requirement is met as the legal theory for each class member is based on the same facts and legal theory as [plaintiff].").

Plaintiffs, and all Class members, received the same type of prerecorded calls from Defendant to their cell phones. There are no concerns about unrelated vendors or vicarious liability because CrossCountry did all the calling conduct at issue in house using the same dialer. It has produced complete, detailed records of the calls, although some records have been redacted. Defendant did not use potentially disparately liable third parties to place them. The fact that all the calls were sent using common business practices further establishes typicality.

And the fact that L.D. is a minor does not render L.D. atypical or inadequate. Numerous courts have certified class actions where minors' rights were violated and held that such minors' experiences were typical. *See, e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d

8

904, 922 (N.D. Ill. 2022), *appeal dismissed*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) ("The named Plaintiffs' claims share the same essential characteristics with those of the absent class members."); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 987 (9th Cir. 2023) (reversing dismissal of action for calls placed to minor's when guardian stated she placed the number on the Do Not Call Registry to "protect her minor son from being inundated with advertisers").

Nor do individualized consent issues render the Class here at all atypical. Like all other Class members, Plaintiffs did not consent to receive these calls. CrossCountry simply relied on its vendor, iLeads, to obtain, verify, and maintain express written consent, which it did not do. (Berger Dep. 65:9-24.) CrossCountry admitted that, despite its best efforts, "in this circumstance the phone number that was supplied in that opt-in isn't the person's name, but I guess that's why we're here today." (*Id*. 66:2-5.) Thus, with respect to both Plaintiffs and other Class members, CrossCountry has produced no evidence of consent or proffered any consent defense.

Defendant has not produced a *single piece of purported consent* for the Class here because the Class is predicated upon leads that Defendant's very own records indicate it did not have any possible sources of consent. Moreover, as consent is an *affirmative defense* in a TCPA case, Defendant has failed to show any evidence sufficient to defeat class certification, let alone prove this defense. And both Plaintiffs have denied ever providing their consent, and no evidence has been adduced showing the contrary. (Johnstone Decl. ¶ 9, 10.) Courts also do not see consent issues as destroying typicality, particularly when, as here, the purported customer denies having consented and where there are either uniform issues with the proffered consent evidence or, as here, no such consent evidence at all. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). But even if there

9

*was* consent evidence in this case indicating that a minor had provided consent to receive calls from Defendant, this argument has been rejected by multiple courts. *See A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018); *see also Hall*, 72 F.4th at 987.

Like all other Class members, Plaintiffs seek statutory damages as a remedy, eliminating the need for a damages hearing. Courts routinely certify as typical TCPA cases where, like here, the same circumstances caused the calls at issue. *See, e.g.*, *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012); *Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 626 (S.D. Cal. 2015). For the foregoing reasons, this case satisfies the typicality requirement. All putative Class members' claims flow from the same conduct that produced the calls at issue.

4. <u>The adequacy requirement of Rule 23(a)(4) is satisfied because Plaintiffs are ideal TCPA class representatives and TCPA-experienced counsel represent them.</u>

The adequacy analysis has two parts. First, Plaintiffs must demonstrate that they can represent the Class's interests "fairly and adequately." FED. R. CIV. P. 23(a)(4). Additionally, Plaintiffs must also demonstrate that their chosen counsel will do so. Class representatives are adequate if their interests are not antagonistic to members of the class. *Rutherford*, 133 F.3d 905. If the representative parties share the class's interest in resolving the common issues, certification is appropriate. *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667 (N.D. Ohio 1995). Additionally, Plaintiffs must also demonstrate that neither they nor counsel have a conflict of interest between themselves and class members. *Amchem*, 521 U.S. at 625.

Plaintiff Linda Johnstone is your typical adequate Class Representative. She is an ordinary consumer who is fed up with the calls at issue. She is familiar with the nature of the litigation, the claims at issue, and what is required of her as a Class Representative. (*See generally* Johnstone Decl.) There is no doubt that Plaintiff Johnstone can and will adequately represent this Class. Nor does the fact that L.D. is a minor here represented by her mother,

10

Plaintiff Johnstone, at all render her inadequate. And in *TikTok*, the court rejected the argument that minor class members were inadequate representatives. *TikTok*, 617 F. Supp. 3d at 924. In addition, Plaintiffs' counsel have extensive experience prosecuting TCPA class action cases. (Declarations of A. Paronich and B. Murphy, attached as Exs. D & E.)

C. **This case satisfies the requirements of Rule 23(b).**

In addition to satisfying Rule 23(a)'s requirements, Plaintiffs must also demonstrate they satisfy one of the three subsections of Rule 23(b). Here, class certification is appropriate under Rule 23(b)(3) because common questions of law or fact "predomin[ate]" and because the class action mechanism is "superior" to other methods to adjudicate the controversy.

1. Both common legal and factual questions predominate because there is uniform lack of consent and uniform calling conduct, satisfying the first part of Rule 23(b)(3).

This case includes only members with no evidence of consent and who were sent prerecorded messages to their cell phones. This Class satisfies predominance because the "proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. The purpose predominance is to "identify the substantive issues that will control the outcome" of the case and "consider how a trial on the merits would be conducted if a class were certified." *Fenley v. Wood Grp. Mustang, Inc.*, 325 F.R.D. 232, 251 (S.D. Ohio 2018).

Predominance is "readily met" in consumer cases. *Amchem*, 521 U.S. at 625. In addition, while Rule 23(b)(3) requires a showing that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen*, 568 U.S. at 460. Whether this case is ultimately decided for the Class, resolving it will involve answering questions common to all members. "The commonality requirement is satisfied if there is a single factual or legal question common to the entire class. The predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton*

11

*Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Predominance requires showing the elements of the cause of action are subject to classwide proof. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Despite this low bar, in a small minority of TCPA cases, individualized questions of consent present issues that are so central to the case and so uncommon to the class such as to counsel against class certification. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017). Not so here. This case is unique in that the Class membership identified here consists *entirely* of Class members whom CrossCountry does not have any evidence of consent *whatsoever* to contact. Accordingly, the same evidence of a lack of consent is subject to "generalized proof, and thus applicable to the class as a whole." *Bridging Cmtys., Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016) (cleaned up).

Contrasting *Sandusky* from *Top Flite* shows why this case satisfies predominance. In *Sandusky*, the Sixth Circuit affirmed denial of class certification because individualized issues of consent defeated predominance. *Sandusky*, 863 F.3d at 468. Unlike here, the defendant produced half a million pages of documents demonstrating concrete evidence that "several thousand" individuals not only consented but also were current or former customers of the defendant. *Id.* This was a "sufficiently individualized" inquiry that precluded class certification. *Id.*

In *Top Flite*, the Sixth Circuit *reversed* the district court's *denial* of certification on predominance grounds and held that the district court erred in holding that individualized consent issues predominated over classwide issues. There, the defendant, a mortgage company, just like here, had purchased a list of customers from a third party and sent them fax blasts, mistakenly thinking it had consent. *Top Flite*, 843 F.3d at 1122. This case is remarkably identical to *Top Flite*, where the plaintiffs there, as here, "presented evidence suggesting a class-wide

12

absence of consent—evidence that B2B failed to contact anyone on the list it purchased from InfoUSA to verify consent prior to faxing them advertisements." *Id.* at 1125.

Defendant has not provided evidence that a single Class member provided TCPA-compliant consent to receive telemarketing calls. Among other requirements, the consent required for telemarketing via prerecorded message to a cell phone is "prior express written consent*." Herrick v. QLess, Inc.*, 216 F. Supp. 3d 816, 818 (E.D. Mich. 2016). Defendant has produced no evidence that any one of the statutory prerequisites was satisfied for any Class member. Defendant has failed to meet its affirmative burden to prove consent in response to an alleged violation of the TCPA. The Sixth Circuit went on to explain in *Top Flite* that failure to satisfy the statutory prerequisites for obtaining consent necessitates granting class certification and that the "mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)." *Top Flite*, 843 F.3d at 1125-26.

Importantly, the *only* evidence that Defendant ever produced in discovery relating to consent was a "Jornaya ID," which indicates that an associated telephone number *may have* provided their consent to be called. (Woolfson Decl. ¶ 29; Berger Dep. 33:21-34:1.) *A fortiori*, when there is no Jornaya ID, there is no claim that a form was ever filled out containing the Class member's information on it, particularly because Defendant here did not collect consent itself. (Berger Dep. 32:5-8 ("iLeads had the data. ILeads would have some type of connection with that website, but I would never be able to know what that connection is.").) Plaintiffs' Class here avoids the biggest certification hurdle to TCPA cases entirely because it obviates the consent analysis, rendering the classwide issues as predominant as possible.

There remain only "aggregation-enabling issues in the case," such as the lists of calls, whether those numbers were cell phones, and whether prerecorded messages were used on the

13

calls. These issues are more prevalent than any "non-common aggregation-defeating individual issues," which do not exist. *Bouaphakeo*, 577 U.S. at 453. The vast majority of the certification work has already been done for this Court to a greater extent than required by Rule 23. There exists uniform conduct that all Class members can use to make a *prima facie* showing of their TCPA claims. *Id.* Courts routinely certify TCPA claims when the same calling conduct applies to the class as proven through objective evidence on a classwide basis. *See, e.g.*, *Krakauer*, 311 F.R.D. 384, 394-95 (M.D.N.C. 2015) (noting that common questions in TCPA class action predominated over individual questions), *aff'd,* 925 F.3d at 655-57 (remarking on predominance); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (holding predominance was satisfied when consent hinged on a legal question); *Wilkes v. CareSource Mgmt. Grp. Co.*, No. 4:16-CV-038 JD, 2016 WL 7179298, at *7 (N.D. Ind. Dec. 9, 2016) (holding that predominance was satisfied when consent was obtained in a common manner).

2. <u>A class action is clearly the "superior" method of adjudicating claims under the TCPA.</u>

The four factors of the superiority requirement set forth in Rule 23(b)(3) are also satisfied. The guiding policy behind the class action mechanism is to overcome problems posed by the miniscule incentive that small recoveries pose. *Amchem*, 521 U.S. at 616.

*First*, if this Court denied certification, few members of the Class would have an interest in bringing an individual claim against one of the largest mortgage companies in the United States, seeking to recover a relatively small amount and likely do not have the necessary legal resources to do so. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386 (2012). As a result, the class action mechanism is clearly superior to individual litigation, thus satisfying superiority. *See* William B. Rubenstein, 2 *Newberg on Class Actions* § 4:87 (5th ed.) (noting superiority requirement is met in class actions involving small claims). *Second*, although Defendant has

14

been sued for nearly identical conduct before, Plaintiffs are not aware of any other such currently pending actions against Defendant. Plaintiffs are the first and only people holding Defendant accountable for its conduct in calling cell phones with prerecorded messages without consent. *Third*, class treatment will conserve judicial resources here in the Northern District of Ohio where Defendant is located, will promote consistency, and will efficiently adjudicate the dispute, as opposed to the alternative of hundreds of individual cases filed by individuals or informally demanding TCPA damages from Defendant. Therefore, adjudicating these claims here would provide benefits not available with individual litigation. *Krakauer*, 311 F.R.D. at 400. *Finally*, consumer class litigation involving such straightforward claims is easily manageable and would be litigated once, as this Court has done many times before. As in other TCPA cases, Plaintiffs can and have proved the TCPA violations alleged here through analysis of the calling records produced by Defendant and relying on straightforward, generally accepted scientific expert analysis. Additional evidence at trial will only involve a handful of witnesses with knowledge as to CrossCountry's marketing conduct and practices.

      The class action mechanism effectuates the important social and cultural goals underlying the TCPA. The statute was designed from the ground up to create a simple scheme for determining violations, adjudicating a limited number of defenses, and making victims whole using statutory damages. *Krakauer*, 925 F.3d at 659. The Fourth Circuit observed that "the advantages of class resolution follow directly from the statute," which "creates a simple scheme" for resolving the problem of "repeated and unwanted telemarketing calls." *Id.* at 659, 663. Congress prescribed strong medicine for a serious disease. This resounding endorsement of TCPA class actions leaves no room for doubt as to the fact that this case must be certified and that the class action mechanism is superior.

Dated: April 15, 2024          Respectfully submitted,

                                     **/s/ Brian K. Murphy**
                                     Brian K. Murphy (0070654)
                                     Jonathan P. Misny (0090673)
                                     Murray Murphy Moul + Basil LLP
                                     1114 Dublin Road
                                     Columbus, OH 43215
                                     Telephone: 614.488.0400
                                     Facsimile: 614.488.0401
                                     E-mail: murphy@mmmb.com
                                                     misny@mmmb.com

                                     Anthony Paronich (admitted *pro hac vice*)
                                     Paronich Law, P.C.
                                     350 Lincoln St, Suite 2400
                                     Hingham, MA 02043
                                     Phone: 617.485.0018
                                     Fax: 508.318.8100
                                     E-mail: anthony@paronichlaw.com

                                     Charlotte Fernee Kelly (admitted *pro hac vice*)
                                     Fernee Kelly Law
                                     1228 E. 7th Ave., Suite 200
                                     Tampa, FL 33605
                                     Telephone: 813.315.3981
                                     E-mail: charlotte@ferneekellylaw.com

                                     Brian T. Giles (0072806)
                                     The Law Offices of Brian T. Giles
                                     1470 Apple Hill Road
                                     Cincinnati, OH 45230
                                     Telephone: 513.379.2715
                                     E-mail: Brian@GilesFirm.com

                                     *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

This is to certify that on April 15, 2024, I electronically filed the foregoing with the Clerk of Courts via the CM/ECF System, which will send notification of such filing to all counsel of record.

**/s/ Brian K. Murphy**
Brian K. Murphy
