IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA JOHNSTONE and L.D., by and through her mother, LINDA JOHNSTONE, individually and on behalf of a class of all persons and entities similarly situated, | : : : : | Case No. 1:22-cv-01111-BMB<br><br>Judge Bridget Meehan Brennan |
| Plaintiffs, | : : | |
| v. | : : | |
| CROSSCOUNTRY MORTGAGE, LLC, | : : | |
| Defendant. | : | |

**REPLY MEMORANDUM IN FURTHER
SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

Defendant's problems with Plaintiffs' motion are largely superficial; when viewed in light of the applicable legal standards *for class certification*, they provide little reason why this class should not be certified. The class to be certified here relies on Defendant's *own records* to show that Defendant violated the TCPA. Plaintiffs' expert has analyzed those records and determined that they show that Plaintiffs, and all class members, received highly illegal prerecorded calls to their cell phones. That some dispute exists over interpreting those records does not alter the analysis. Subsequent resolution of allegedly differing expert opinions is more appropriately reserved for trial and will be uniformly resolved as to all class members. For these reasons, there is no question that the Court should certify the proposed class.

**ARGUMENT**

**A.      Differences in expert analysis do not render the class unascertainable.**

1

As Defendant is forced to concede, a class is ascertainable under Rule 23 if its membership can be determined through objective criteria. Here, the class Plaintiffs seek to certify is not only ascertainable but in fact has already been ascertained, because Plaintiffs rely on the objective criteria of Defendant's own calling records, as analyzed through Plaintiffs' expert, Aaron Woolfson. As he explains, the Waterfall Analysis 2 does not filter out unspecified records but outlines the type of records filtered out at each step of the waterfall, resulting in 27,211 unique telephone numbers. (Doc. 57-4 at ¶¶ 49, 50.) Each step of that analysis utilized independently-verifiable, objective criteria, such as whether the call records were redacted, whether they contained a Jornaya ID, whether they were duplicates, and if they contained the critical "IVR Path" field. (*Id.*) Defendant's expert could have done the same and executed the same analysis but did not. As Mr. Woolfson's supplemental expert declaration explains, whether each class member received a prerecorded call from Defendant is ascertainable from Defendant's call logs and whether those logs indicate that the call was transferred to a human being or if the call instead played a prerecorded message.

Defendant's calling records upon which the class is based are objective. That an analysis of those records is subject to the traditional battle of the experts does not mean that the class definition relies on subjective criteria. Each other element of the class definition here is also ascertainable objectively. Plaintiffs need not rely on expert analysis for the Court to conduct an objective inquiry as to whether the calls were from Defendant or if Defendant was calling to promote its products and services. The calling records produced all came from Defendant's phone system, and Defendant has admitted that it placed them. Defendant has not claimed that anyone else placed the calls at issue. Furthermore, the records produced in discovery reveal that all class members were called as a result of Defendant purchasing mortgage leads from iLeads.

Defendant redacted the records of calls from other lead sources. The records simply do not reflect calls that Defendant would have placed for any other purpose than promoting their products and services, such as to seek information while processing a loan application. Defendant used the Five9 system at issue here exclusively for marketing.

The class here is also not a failsafe class. This case is nothing like the *Sauter* class cited by the Defendant. There, the court noted the "contradictory conclusions" reached by courts in determining failsafe classes in the TCPA context. *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *6 (S.D. Ohio May 7, 2014). It held that because the class defined membership based upon whether a class member *consented*, the class consisted "solely of persons who can establish that defendant violated the TCPA." *Id.* at *7. The court nevertheless permitted amendment to remedy the failsafe class issue. *Id.* Here, the class definition *does not reference consent* and consists entirely of members for whom there exists *no evidence of consent*. The class here is not vague; by contrast, it is remarkably specific, identifying a particular group of individuals harmed in a particular way. *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 660 (7th Cir. 2015). When, as here, the class has a *lack of* consent, the class is not failsafe. *See Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014).

B.      **Defendant misconstrues Plaintiffs' burden under Rule 23(a).**

Defendant's attempt to preclude class certification is flawed because it relies on rank speculation and attempts in large part to argue a battle of the experts at the class certification stage. But the Court's inquiry at the class certification stage centers upon whether a plaintiff has demonstrated that she met the requirements of Rule 23, not whether a plaintiff will ultimately prevail on the merits. *Amgen v. Connecticut Ret. Plans*, 568 U.S. 455, 465-66 (2013). It is for a jury to evaluate the conflicting expert opinions and determine if Defendant violated the TCPA.

Whatever the jury decides, it will be able to do so with respect to all class members based on disputed but uniform evidence in the form of Defendant's own records.

    1.    <u>Typicality does not require complete uniformity in claims; Plaintiffs' experiences arise out of the same course of conduct and are typical of other class members.</u>

Defendant misconstrues the typicality analysis as requiring a uniformity in facts, not a uniformity in legal theories, as is actually required. *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Regardless of any factual disputes identified by Defendant, Mr. Woolfson's analysis revealed that Plaintiffs nevertheless received one prerecorded call based upon the IVR Path entry, which, in his expert opinion, reflects a prerecorded call. (Doc. 57-4 at ¶ 50.) Mr. Woolfson arrived at this conclusion because he has developed IVR systems, experience which Defendant's expert lacks, and is familiar with their operation, including that such systems are used to allow computers to interact with humans and must necessarily play a recorded message in order to do so, as outlined in Plaintiffs' brief. (*Id*. at ¶¶ 3, 8).

Defendant attempts to attack Mr. Woolfson's analysis by falsely stating, "it is undisputed that this call … contains zeroes for *all values associated with call time and duration*" (*See* Doc. 65 at pp. 3, 5 (emphasis added).) But Defendant ignores the "call time" of 19 seconds and "billable time" of 24 seconds also considered by Mr. Woolfson. (Doc. 58-14 at Ex. A.) Indeed, Mr. Woolfson's analysis *removed* records with 0 duration and 0 billable time, indicating the call was not connected to anything, including a voicemail greeting. (Doc. 57-4 at ¶ 49.) Given that the recording of one of the prerecorded messages Defendant used and produced in discovery lasts 17 seconds (attached as Ex. 1 to Declaration of Jonathan P. Misny ("Misny Decl."), attached hereto as Exhibit A), it follows that Plaintiffs actually did receive a voicemail with a prerecorded message. When Defendant refers to zero duration, it is apparently referencing the "talk time" and "handle time," each of which, per Five9's explanation of those fields, only begin

4

counting after the call is assigned to a human agent. (Five9 Standard Call Log, attached as Ex. 2 to Misny Decl.; *see also* Doc. 65 at pp. 3, 5.) It makes perfect sense and is to be expected that on a call where a live agent did not come on the line and a recording played, those values would be zero.

The fact that a prerecorded message was played on Plaintiffs' voicemail is further confirmed by Defendant's telemarketing policy, which has an entire section about prerecorded messages to be left on voicemail, stating in relevant part that ████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████████████
(Telemarketing Policy, attached as Ex. 3 to Misny Decl.[1]) If Defendant did not leave prerecorded voicemail messages, it would logically have no need for this policy, further confirming the voicemail that was left was prerecorded.

Factual haziness as to the details of unremarkable, unwanted calls are insufficient to demonstrate atypicality. Regardless, the TCPA does not require that a plaintiff actually listen to or answer the prerecorded call; the plain language of the statute prohibits the "making" of a call using a prerecorded voice to a cell phone. 47 U.S.C. § 227(b)(1)(A); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (holding that prerecorded message left on voicemail violated the TCPA). The fact a prerecorded call was made to Plaintiffs, like all class members, is determinable through Defendant's own records, and those records reveal that Plaintiffs, like all

---

[1] Because Defendant has designated this document as confidential, Plaintiffs are filing a motion for leave to file this exhibit under seal contemporaneously with this reply.

5

class members, received prerecorded calls. That is a typical legal claim capable of classwide, typical analysis. If a factual dispute exists, it is to be resolved at trial, not here.

Similarly, the existence of a Jornaya record for Plaintiffs' phone number does not change the legal conclusion that neither Plaintiffs nor any of the class members consented. Again, Defendant here mistakes *factual* typicality from the *legal* typicality required by Rule 23(a)(3). In order to prove their claims, the class as a whole, together with Plaintiffs as their representatives, must address any affirmative defense of consent, as prior express written consent is an affirmative legal defense to a TCPA claim. 47 U.S.C. § 227(b)(1)(A). But, consistent with the Sixth Circuit's typicality jurisprudence, Plaintiffs and other class members can rely on differing operative factual proof to prove that their legal claims are typical. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552-554 (6th Cir. 2006); *Iannone v. Autozone, Inc.*, No. 19-cv-2779-MSN-tmp, 2022 U.S. Dist. LEXIS 185251, at *34-36 (W.D. Tenn. Aug. 12, 2022) (summarizing Sixth Circuit law that has "consistently held that representative claims need not always involve the same facts or law as the claims of the class to by typical.") (citation omitted).

Here, Plaintiffs have already established that, despite the existence of Jornaya information, the purported consent is legally deficient because *it does not name Plaintiffs or Defendant* and because discovery has shown "Julie Johnson" also did not consent. With respect to the absent class members, the Court need not even rely on Jornaya data because Mr. Woolfson's analysis removed numbers for which there existed Jornaya data or some evidence of consent. Thus, the remainder of the class consists entirely of individuals who did not consent, an identical legal claim. With the exception of Plaintiffs, for whom there exists an easily-disproved Jornaya token and for which there is no consent as a legal matter (not the least of which because a minor cannot consent to anything), the remainder of class members have no such tokens and

6

likewise share a common legal claim that they did not consent. In the unlikely event that Defendant tries to make an individualized dispute of Plaintiffs' consent at trial, such issues will nevertheless not control and overtake the trial.

    2.    <u>Plaintiffs here are not inadequate.</u>

Under the TCPA, the "recipient" of an unlawful call may sue, and courts have concluded that a "recipient" also includes the number's owner or regular user, even if they did not answer the call at issue. *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990 (9th Cir. 2023) (citing *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 647 (4th Cir. 2019) ("If a wife, as the subscriber, lists a home telephone number on the Do-Not-Call registry, but her husband happens to be the one who receives the improper calls ... [b]oth the wife and the husband can suffer the harm that Congress sought to deter.")). Here, Plaintiff Linda Johnstone originally sued for calls that her minor daughter received, and the case was subsequently amended to add in L.D. as the actual recipient of both calls. There is no dispute that the number is on Ms. Johnstone's account and that she pays the bill for her minor daughter. There is also no dispute that L.D. uses the number, including the voicemail services on the number. Ms. Johnstone's response to Defendant's complaint about L.D.'s absence was to add in L.D., rectifying the alleged "shadow plaintiff" issue. Defendant now suggests at class certification, and after the amendment deadline, that Plaintiffs should also add in L.D.'s father, Mr. Loftus.

As an initial matter, it is questionable if L.D.'s father, to whom she *passed* the phone after answering the *second* call, even qualifies as a "recipient." But even to the extent he is also a "recipient," no showing has been made that Ms. Johnstone and L.D. are at all inadequate to represent the class's interests. Defendant can, and did, depose Mr. Loftus. He is available as a fact witness. But even his presence as a fact witness in this case will be unnecessary because the class evidence is premised upon the Defendant's own calling records, not Plaintiffs' experiences

7

or testimony. At most, Plaintiffs will merely confirm facts already known and adduced, including the ownership of the number, the use of the number, whether it is a cell phone, and addressing any consent defense at trial. Unlike in some other cases, the burden on a TCPA plaintiff is already quite minimal because of the straightforward nature of the claims involved. This is even more so here, where the class has been ascertained and class certification is sought exclusively on Defendant's own evidence.

With respect to the consent defense, there is little to be said here that has not already been said, but Plaintiffs are in the same position as all other class members because legally deficient consent is legally the same as no consent at all, and it is well-settled that a minor cannot consent to receive calls under the TCPA. Expressly considering the adequacy of minors' ability to represent absent class members, including on such contractual defenses as inability to agree to terms of service for using an app, another court has remarked:

> Twenty-eight of the thirty-five proposed class representatives are minors and, thus, have an interest in obtaining the best settlement for themselves and of other minor class members. Moreover, their attorneys have participated actively throughout these proceedings, including during the various settlement negotiations. To the extent that Mark S. worries that the interests of minor class members have not been protected there, *such worries are baseless*.

*In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 924 (N.D. Ill. 2022), *appeal dismissed*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022).

This case is also nothing like the extreme facts in the cases cited by Defendant in claiming that Plaintiffs here are inadequate. For example, in *In re AEP ERISA Litig.*, No. C2-03-67, 2008 WL 4210352, at *3 (S.D. Ohio Sept. 8, 2008), the class plaintiff did not speak with his counsel for three years until his deposition was noticed, provided no documents, stated that he was "too old," only looked at the first "two or three pages" of documents presented to him, and

stated that he did not have time to pursue the case. Similarly, in *Forrest v. Shenandoah Valley Nat. Park*, No. 06-C-11, 2007 WL 1029503, at *4 (E.D. Wis. Mar. 28, 2007), the plaintiff stated that she never sued anybody, was unaware of eleven other lawsuits filed in her name, and, when presented with a letter that formed the basis of the lawsuit, denied ever having received it or known that it was the basis for her claims.

And despite claiming that Johnstone conducted "little to no factual investigation, admitting to falsities in the complaint, and later revealing her minor daughter" was the recipient of those calls, Defendant offers no *specific* citations to the records to justify these accusations. On the contrary, L.D.'s deposition, together with those of Ms. Johnstone and Mr. Loftus, demonstrate that they are aware of the lawsuit, the nature of the claims, including the class claims, and the basic details of the calls at issue. Moreover, in addition to her participation throughout the discovery process, Ms. Johnstone demonstrated her dedication to this case by taking time out of her busy schedule to travel from California to Ohio to participate in-person in the mediation with Judge Grimes earlier this year and declining to take a much simpler path to recovery on an individual basis in the interests of the class. Critically for this analysis, Defendant makes no showing that Plaintiffs here are not acting in the best interest of all class members.

Plaintiffs provided no false testimony. Courts generally do not find inadequacy except when a plaintiff's testimony differs sharply from the requirements for the cause of action. *See Kline v. Wolf*, 702 F.2d 400, 401 (2d Cir. 1983) (holding plaintiff was inadequate when she lied about purchasing stock and lied about relying on an unpublished annual report). In such cases, a credibility problem diverts attention from and diminishes the class's claims. Otherwise, the credibility of a class representative on non-collateral matters is adequately addressed at jury trial. *Tolan v. Computervision Corp.*, 696 F. Supp. 771, 780 (D. Mass. 1988). In any event, the

portions of the deposition transcript cited demonstrate nothing near the level of infirmity the *AEP* and *Forrest* courts identified. For instance, Defendant's counsel repeatedly asked L.D. highly specific questions about unremarkable calls more than a year after they were received, which even most adults would have trouble answering. (Doc. 65-9 at 16:25-17:3, 29:10-24).

Similarly, the portion of Ms. Johnstone's deposition cited the truth—that she was not there at the time of the calls and therefore did not know the date or time they were received—but omits the fact that Ms. Johnstone provided call detail records in discovery, records which match Defendant's own records. (Doc. 65-8 at 38:10-23.) Moreover, Ms. Johnstone did not "admit" to failing to verify her amended responses to Defendant's second set of interrogatory responses. Rather, she testified that she had reviewed the responses, and like most people without legal training, the transcript reveals that she was confused by the nature of the document. (*Id.* at 112:6-25 ("I don't see that it's asking for my signature.").) Most laypersons share this sentiment that causes legal documents to appear confusing; this fact does not render them inadequate class representatives. Nor does Ms. Johnstone's lack of direct contact with every member of the multiple firms representing her prior to filing the action render her inadequate.

3. Factual disputes do not defeat commonality.

Defendant says little of substance regarding the alleged lack of commonality here, and what Defendant does say is largely the product of a classwide factual dispute. Defendant claims in conclusory fashion that Plaintiffs "did not receive abandoned call messages." As explained above, however, not only is this contention flatly contradicted by Defendant's own records, which show a "call time" of 19 seconds for one call with an IVR Path, the issues cited rely on differing disputed classwide interpretations of the calling data. Though disputed, these questions are for a jury to decide. Similarly, despite a slight difference in consent fact patterns, the common issue of whether any class member consented when there is no Jornaya information can

easily be commonly established. A dispute as to factual questions does not show that Plaintiffs are uncommon as to all class members' claims at the class certification stage. The factual disputes can be commonly adjudicated with respect to the entire class at trial.

C.   **Defendant also misconstrues Plaintiffs' burden under Rule 23(b).**

Just like under Rule 23(a), Rule 23(b)(3) requires no showing of "evidence" that plaintiff will prevail at trial. All Plaintiffs must prove at class certification is that common questions of law or fact "predomin[ate]" and that the class action mechanism is "superior" to the other available methods to adjudicate the controversy. This requirement is satisfied here.

1.   There are no individualized issues that predominate because the class is based upon common issues present in Defendant's own records.

As explained above and more fully in Plaintiffs' original briefing, this case readily satisfies the predominance requirement because it consists entirely of members (1) which Plaintiffs' expert analysis of *Defendant's own records* reveals received prerecorded calls and (2) members for which there is no legal showing of consent. As Defendant correctly notes, the Court is called upon to determine whether classwide answers to these two critical factual questions predominate over individualized ones. That task is readily accomplished here, because Defendant's own records, which have already been analyzed, demonstrate that each class member received prerecorded calls without consent. And though Defendant unquestionably has a right to test those assertions at trial, including by its own proffer of a counter expert, they will be answered one way or the other with respect to the entire class.

This simple, straightforward case, including only those class members where there exists no evidence of consent whatsoever and where each class member was contacted using a pre-recorded message to their cell phone, is the touchstone for satisfying the predominance requirement because the "proposed class [is] sufficiently cohesive to warrant adjudication by

11

representation." *Amchem*, 521 U.S. at 623-24. The purpose of the predominance requirement is to "identify the substantive issues that will control the outcome" of the case and "consider how a trial on the merits would be conducted if a class were certified." *Fenley v. Wood Grp. Mustang, Inc.*, 325 F.R.D. 232, 251 (S.D. Ohio 2018) (cleaned up) (citing cases). And, in the Sixth Circuit, predominance must only be inquired into *after* the court has identified issues suitable for class treatment, as Plaintiffs have outlined above. *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 413 (6th Cir. 2018).

The predominance requirement merely requires the plaintiff to show that the elements of the underlying cause of action are subject to classwide proof arising from common conduct. To evaluate predominance, "a court must first characterize the issues in the case as common or individual and then weigh which predominate." *Martin*, 896 F.3d at 413. (citing Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 4:50 (5th ed. 2010)). In other words, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Contrary to Defendant's assertions, Plaintiffs' expert's analysis of the IVR field data necessarily indicates that a prerecorded message was played for each one of the calls for which there is an IVR Path field. Whether a jury believes Plaintiffs' expert or Defendant's expert (who has no experience with IVR) on whether or not the IVR Path field indicates that a prerecorded message was played, the importance of analysis of this field and related fields in Defendant's call logs shows that this issue predominates. Neither the jury nor the Court will conduct individual mini-trials as to the meaning of disputed factual evidence, such as evaluate each call. The Court

and juries are well-equipped to evaluate factual disputes based on conflicting expert testimony relying on the same set of documents and determine whether or not those documents evidence the existence of a prerecorded call or not. Courts routinely certify class actions in TCPA cases where all major issues can "be shown through aggregate records," thus eliminating the need for "individual fact-finding." *Krakauer*, 925 F.3d at 658.

Simply put, a jury will determine whether every class member for which a certain record exists in the IVR field received a prerecorded message or not. Even taking Defendant's contention that there exist nine unique IVR Paths as true for the purposes of this motion, evidence can be adduced from each expert at trial, and the jury could easily determine whether or not that data indicates the delivery of a prerecorded message or not, such as by nine special jury interrogatories. There can be no legitimate argument that nine data points presented to the jury for evaluation causes individualized questions to predominate over classwide ones.

So too with the consent issue. Even taking as true Defendant's testimony that, despite not producing such evidence in discovery or providing it to the Court, Defendant has since identified 8,000 more Jornaya IDs corresponding to phone numbers identified on the Waterfall Analysis 2, that would still leave 20,000 odd class members for which there *still* exists no record of a website visit and thus the lack of consent. Defendant merely *speculates* that customers might "fill out multiple inquiries online related to a mortgage need," (Doc. 65 at p. 14), but this speculation is belied by the fact that Defendant has produced *no other evidence* demonstrating that such website visits actually occurred so as to meet its burden of proving this *affirmative defense* at trial. Discovery is now closed. Defendant's only proffered evidence of consent were the Jornaya IDs, which were excluded from Plaintiffs' expert's analysis. Therefore, Defendant will have *no evidence whatsoever* of consent for *any* class member.

13

The Sixth Circuit went on to explain in *Bridging Cmtys., Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016), that such failure to satisfy the statutory prerequisites for obtaining prior express written consent necessitates the granting of class certification and that the "mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)":

> In light of the foregoing, particularly the class-wide evidence [plaintiffs] presented showing an absence of consent, we hold that speculation alone regarding individualized consent was insufficient to defeat plaintiffs' showing of predominance under Rule 23(b)(3). … We have recognized repeatedly that the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones. Here, Bridging Communities and Gamble presented evidence suggesting a class-wide absence of consent—evidence that B2B failed to contact anyone on the list it purchased from InfoUSA to verify consent prior to faxing them advertisements. In response, Top Flite merely alleged that class members might have given consent in some other way. … We are unwilling to allow such speculation and surmise to tip the decisional scales in a class certification ruling, particularly under the circumstances present here. Our precedent is clear that a possible defense, standing alone, does not automatically defeat predominance. Even where defendants point to some evidence that a defense will indeed apply to some class members, which is more than Top Flite did here, courts routinely grant certification because Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.

*Id.* at 1125-26.

It bears repeating that the entire class consists of members for whom Defendant has not produced a *single page* evidencing purported consent to contact any class member, in any form, whatsoever. In sum, the consent issue can also unquestionably be determined on a classwide basis and individualized issues do not predominate. There are few cases that shine as a model of predominance as this one.

    2.    <u>Class actions are the *de facto* superior way to adjudicate TCPA claims.</u>

Realizing that the class action mechanism is well-suited to the resolution of relatively small consumer claims, like those under the TCPA, courts rarely, if ever, hold that such class actions are not superior to other available methods to adjudicate the controversy. Defendant's beef with the superiority element mainly speaks to alleged infirmities with the other elements, which have been addressed already. This class action is already shaping up to present a battle of the experts for jury determination. But that fact does not render the class action mechanism not to be the superior method of adjudicating the claims here. If anything, that fact renders this action all the *more* appropriate to classwide certification because the technical issues involved, together with the costly expert analysis undertaken thus far, only makes sense in the class action context. Few plaintiffs would pay $1,500 or more for even a rudimentary expert analysis to only recover that same amount, particularly because the TCPA does not have an attorney's fee hook for individual claims. *Amchem*, 521 U.S. at 616.

Ultimately, adjudication of this case on a classwide basis provides just as many benefits for Defendant as Plaintiffs by permitting Defendant to ultimately dispose of each class member's claim at trial. Even one more class or individual case would simply result in the reduplication of efforts on both sides without any apparent benefit, leading to a tremendous waste of resources— the exact issues the class action mechanism is designed to avoid. There can be no question that the class action mechanism is the clearly the superior method of adjudicating claims under the TCPA.

## CONCLUSION

Because Plaintiffs have satisfied Rule 23's admittedly deferential requirements, Plaintiffs respectfully request that this Court (1) certify the proposed Class, (2) appoint Plaintiffs to serve as the Class Representatives, and (3) appoint Plaintiffs' counsel as Class Counsel.

Dated: May 13, 2024            Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
       misny@mmmb.com

Anthony Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln St, Suite 2400
Hingham, MA 02043
Phone: 617.485.0018
Fax: 508.318.8100
E-mail: anthony@paronichlaw.com

Charlotte Fernee Kelly (admitted *pro hac vice*)
Fernee Kelly Law
1228 E. 7th Ave., Suite 200
Tampa, FL 33605
Telephone: 813.315.3981
E-mail: charlotte@ferneekellylaw.com

Brian T. Giles (0072806)
The Law Offices of Brian T. Giles
1470 Apple Hill Road
Cincinnati, OH 45230
Telephone: 513.379.2715
E-mail: Brian@GilesFirm.com

*Counsel for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

This is to certify that on May 13, 2024, I electronically filed the foregoing with the Clerk of Courts via the CM/ECF System, which will send notification of such filing to all counsel of record.

/s/ **Brian K. Murphy**
Brian K. Murphy