UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LINDA JOHNSTONE and L.D., *by and through her mother,* LINDA JOHNSTONE, *individually and on behalf of all persons and entities similarly situated*, | CASE NO.:  1:22-cv-01111 |
| Plaintiffs, | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CROSSCOUNTRY MORTGAGE, LLC, | |
| Defendant. | |

Before the Court are Defendant's fully briefed Motion for Summary Judgment (Docs. 58, 73, 80), Plaintiffs' fully briefed Motion for Class Certification (Docs. 57, 65, 70), and Defendant's fully briefed Motion to Strike or Exclude Plaintiffs' Supplemental Expert Declaration (Docs. 63, 71, 78).[1]  For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. 58) is GRANTED.[2]  Plaintiffs' Motion for Class Certification (Doc. 57) and Defendant's Motion to Strike or Exclude Plaintiffs' Supplemental Expert Declaration (Doc. 63) are DENIED as moot.

---

[1] Pursuant to the Court's April 30, 2024 and May 16, 2024 Orders (Docs. 66, 74, 75), the parties filed certain briefs under seal (Docs. 67, 76, 77).  This Order will cite to the redacted versions. (Docs. 65-11, 70, 73.)

[2] The Court finds that oral argument is not necessary so Defendant's request for oral argument is DENIED.

1

I.     BACKGROUND

   A.     **Statement of Facts**

Plaintiffs allege Defendant violated the Telephone Consumer Protection Act ("TCPA") by making an unauthorized call to Plaintiffs' cellular telephone using a prerecorded voice message.  (*See* 47 U.S.C. § 227(b); Doc. 38 ¶ 62.)  Defendant CrossCountry Mortgage, LLC ("CCM" or "Defendant") is a mortgage lender that occasionally purchases consumer information from third-party lead providers.  (Doc. 58-1 at 1475.)[3]  In July 2021, CCM began purchasing customer leads from iLeads.com, LLC ("iLeads").  (Doc. 58-1 at 1477; Doc. 58-9 at 1560.)  In February 2022, CCM received information from iLeads indicating a consumer named "Julie Johnson" was interested in refinancing her mortgage.  (Doc. 58-1 at 1477; Doc. 58-9 at 1564; Doc. 58-14 ¶¶ 4, 5.)  The associated telephone number was (805) 657-XXXX ("the 657 Number").  (*Id.*)  In March 2022, CCM contacted the 657 Number twice: on March 2, 2022, and again on March 8, 2022.  (Doc. 58-1 at 1477.)  However, that number belonged to Plaintiffs.

CCM uses the Five9 dialer system to make calls.  (Doc. 58-1 at 1475.)  When a call is placed using the Five9 dialer system and the call is answered, the system attempts to immediately connect the called party with a live agent.  (Doc. 58-1 at 1475; Doc. 58-15 ¶ 7.)  The Five9 system also creates and maintains call records, including the date and time of the calls, the agent assigned to the call, the call duration, the call disposition (*i.e.*, whether the call was abandoned, an opt-out was received, or the call went to an answering machine), and a record of whether the call contained an interactive voice response ("IVR") path.  (Doc. 58-1 at 1476; Doc.

---

[3] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

58-16 ¶ 6.) CCM's record retention policy is to delete everything in Five9 except the call record after 60 days.[4] (Doc. 73 at 4414.)

If an answered call connects with a live agent, the Five9 call record will have some notation in the "Agent" field, along with data in the call time, handle time, and talk time fields. (Doc. 58-1 at 1475; Doc. 58-14 ¶ 7.) If someone answers a call and the dialer system is unable to connect a live agent within two seconds, the call is deemed "abandoned." (Doc. 58-1 at 1475.) When a call is abandoned, the system plays an automated message that identifies CCM by name, provides the reason for the call, and provides the recipient with an automated interactive key-press-activated mechanism to opt out of future calls. (*Id.*; Doc. 58-15 ¶ 6.) CCM uses this "abandoned call" policy to comply with other TCPA and FCC regulations. (Doc. 58-1 at 1476; Doc. 58-9 at 1561.) In discovery, CCM produced two examples of its prerecorded abandoned call messages: one is 20 seconds long and one is 17 seconds long. (*See* Doc. 73 at 4410-11; Doc. 60; Doc. 70-2.)

The existence of an IVR path on a Five9 call record can indicate, among other things: (1) the use of an automated interactive message for abandoned calls; or (2) a system profile update for the contact record if the system detects an answering machine (*i.e.*, voicemail) and the call disposition reflects it reached an answering machine. (Doc. 58-14 ¶ 13; Doc. 65-3 ¶ 7.) If no data is populated for the IVR path, "the call is considered a live call where an effort is made to immediately connect the called party with a live agent." (Doc. 58-16 ¶ 7.)

The Five9 call record for the March 2, 2022 call indicates CCM used the Five9 dialer to place a call to the 657 Number. (Doc. 58-14.) The call went to the recipient's answering

---

[4] Plaintiffs' counsel first contacted CCM on May 16, 2022, after the 60-day retention period. (Doc. 73 at 4414.)

service. (*Id.*) The IVR path is:

"IncomingCall1:LookupContactRecord3:AnswerMachine2:ifCounter=0:COuntstart=0:VMCheck:VM1:AM_Count+:ContactUpdate3:Hangup5."

(*Id.*) The record has no data populated for handle time or talk time. (Doc. 58-1 at 1477; Doc. 58-14 at 1682-88.) Nonetheless, there is a call time of 0:00:19, a queue time of 0:00:00, and a bill time of 0:00:24. (*Id.*) The disposition is listed as "Answering Machine." (*Id.*) There is no record of a voicemail message. (*See* Doc. 80 at 4734; Doc. 58-13.)

The Five9 call record for March 8, 2022, also indicates CCM used the Five9 dialer to place a call to the 657 Number. (Doc. 58-1 at 1477; Doc. 58-14 at 1682-88.) The record indicates: a handle time of 0:00:13; a talk time of 0:00:12; a call time of 0:00:15; a queue time of 0:00:00; and a bill time of 0:00:18. (Doc. 58-1 at 1477-78; Doc. 58-14 at 1682-88.) The record has no IVR path, indicating no automated recording could have played. (Doc. 58-1 at 1478-78; Doc. 58-14 at 1682-88.) The record also indicates the call went to an agent, whose name was deleted from the system after the agent left the company. (Doc. 58-1 at 1478-78; Doc. 58-14 at 1682-88.) The disposition is listed as "Do Not Call." (Doc. 58-1 at 1478-78; Doc. 58-14 at 1682-88.) There were no further calls to the 657 Number.

**B.     Procedural History**

On June 23, 2022, Plaintiff Linda Johnstone ("Johnstone") commenced this class action lawsuit. (Doc. 1.) She alleged CCM contacted her cellular telephone, the 657 Number, with a robocall prerecorded message. (*Id.* at 4.) Johnstone further alleged:

> [T]he call was clearly pre-recorded "because (a) there was a delay *after the Plaintiff answered the line* (b) a "click" to play the pre-recorded message was *heard by the Plaintiff* prior to the pre-recorded message (c) the pre-recorded message was monotone, non-personalized and generic (d) the recording asked the call recipient to press a number.

4

(*Id.* ¶ 23 (emphasis added).) The complaint proposed a nationwide class of persons who received the same or substantially similar robocall message from Defendant. (*Id.* ¶ 32.)

On October 21, 2022, CCM responded to Johnstone's first set of discovery and produced a call log showing CCM made two calls to the 657 Number: one on March 2, 2022 ("March 2nd call"), and one on March 8, 2022 ("March 8th call"). (Doc. 46-1 ¶ 9; Doc. 46-6.)

On October 27, 2022, Johnstone responded to CCM's written discovery, revealing her minor daughter, L.D. (who was not yet a party to the case) answered the March 8th call. (Doc. 58-2 ¶ 6; Doc. 58-4 at 1513-15.) In response to CCM's interrogatories asking Johnstone to identify and provide information regarding CCM's alleged prerecorded communications, Johnstone only identified the March 8th call. (Doc. 58-4 at 1514-15.) Plaintiffs did not provide supplemental responses regarding the March 2nd call. (*See* Doc. 80 at 4732-33.)

On February 7, 2023, Defendant moved for judgment on the pleadings on the ground that the Complaint showed no injury in fact to Johnstone, thereby depriving the Court of Article III jurisdiction. (Doc. 24.) On February 21, 2023, Johnstone filed an opposition brief asserting Defendant "violated the TCPA because it made a prerecorded phone call to *her* about mortgage refinancing without *her* prior express written consent." (Doc. 28 at 217 (emphasis added).) On March 7, 2023, Defendant replied. (Doc. 31.)

On March 9, 2023, Defendant deposed Johnstone and her daughter. (Doc. 58-1 at 1471.) On March 24, 2023, while its motion on the pleadings was still pending, Defendant filed an "emergency" motion to dismiss for lack of Article III subject-matter jurisdiction. (Doc. 32.) In the motion, Defendant pointed out:

> Plaintiff and Plaintiff's daughter provided testimony at their depositions which proves . . .

5

> • The single phone call at issue was neither received nor picked up by the Plaintiff.
>
> • Plaintiff's daughter is the regular and exclusive user of the phone and phone number. Plaintiff's daughter picked up the phone call. Plaintiff was not anywhere near Plaintiff's daughter when Plaintiff's daughter answered the call.
>
> • Plaintiff has no direct knowledge of the phone call, the message that was played, or how long it lasted.

(Doc. 32-1 at 248-49.) On April 5, 2023, the Court conducted a status conference to address the emergency motion. There, "Defense counsel . . . raised concerns about factual inaccuracies in Plaintiff's complaint. Plaintiff's counsel acknowledged concerns related to the Complaint and stated they will be cured in an amended complaint, should the Court grant permission to file an amended complaint." (April 5, 2023 Minute Order.)

On April 6, 2023, Johnstone moved for leave to file an amended complaint, in which she and L.D. both would be named plaintiffs (together, "Plaintiffs"). (Doc. 34.) That motion was fully briefed. (Docs. 35, 36.) On June 9, 2023, the Court granted Plaintiffs leave to file their amended complaint. (Doc. 37.) The Court also denied Defendant's Motion for Judgment on the Pleadings (Doc. 24) and Emergency Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 32) as moot. (Doc. 37 at 478.) On June 12, 2023, Plaintiffs filed their amended complaint ("Amended Complaint"). (Doc. 38.)

In the Amended Complaint, Plaintiffs allege in March of 2022, CCM contacted L.D. twice on her cellular telephone, which was on Johnstone's account. (*Id.* at 482-83.) As to the first call, Plaintiffs allege, "Discovery has also revealed a call on March 2, 2022." (Doc. 38 ¶ 34.) Plaintiffs do not allege anything further about the March 2nd call. (*Id.* at 483-84.) The second call was on March 8, 2022. (*Id.* ¶¶ 26-28.) During that call, L.D. heard a prerecorded message and "placed the call on speaker phone, where her father could hear it." (*Id.*) The

6

alleged prerecorded message "talked about refinancing a mortgage." (*Id.* ¶¶ 29, 31.)  L.D.'s father, William Loftus ("Loftus"), told CCM that L.D. was not interested in their services. (*Id.*)  The allegations regarding the March 8th message being "clearly pre-recorded" in the original complaint were not reasserted in the Amended Complaint. (*Compare* Doc. 1 ¶ 23, *with* Doc. 38 ¶¶ 27-29.)

Plaintiffs bring a claim for making calls to "their residential telephone numbers using an artificial or prerecorded voice in violation of [47 U.S.C. § 227(b)]." (*Id.* ¶ 63.)  Plaintiffs allege, "If the Defendant's conduct is found to be knowing or willful, the Plaintiffs and members of the Class are entitled to an award of up to treble damages." (*Id.* ¶ 64.)

During their depositions, Johnstone, L.D., and Loftus each confirmed that the March 8, 2022 call was the only prerecorded call at issue. (*See* Doc. 80 at 4733-34; Doc. 58-1 at 1475.)  On November 17, 2023, CCM gave supplemental responses to Plaintiffs' discovery requests, including an explanation of the IVR Path data from Five9. (Doc. 78-1 ¶ 3; Doc. 78-2.)  On December 4, 2023, CCM produced a spreadsheet from the Five9 call records that contained the IVR Path data for the March 2nd and March 8th calls to the 657 Number. (Doc. 80-1 ¶ 10; Doc. 58-14 at 1685-90.)

On December 22, 2023, Plaintiffs moved for leave to file a second amended complaint. (Doc. 44.)  Plaintiffs sought "to add an additional class claim for violations of the 'Do Not Call' provisions of the TCPA." (Doc. 44 at 519.)  The proposed Second Amended Complaint added an allegation that the 657 Number was placed on the National Do Not Call ("DNC") Registry in July 2019, but did not add any new allegations about the March 2nd or March 8th calls to the 657 Number. (*See* Doc. 44-2.)  Plaintiffs attached a Declaration of Expert Aaron Woolfson opining on whether CCM made calls to individuals on the national DNC list. (Doc. 44-1.)  Defendant

7

opposed the motion for leave. (Doc. 46.) On reply, Plaintiffs acknowledged they were previously aware the 657 Number "was on the National Do Not Call Registry, but at the time the original Complaint was filed, Plaintiffs did not know that they received more than one call," which is required for a DNC claim. (Doc. 47 at 625-26.) Plaintiffs asserted they were not aware of the March 2nd call "until [CCM] produced a record of a second call in discovery." (Doc. 47 at 625-26.)

On April 9, 2024, the Court denied Plaintiffs' motion for leave, finding "Plaintiffs submitted no evidence or argument to excuse or explain their dilatory failure to seek leave to add a DNC registry claim." (Doc. 54 at 656-57.) The Court noted Plaintiffs knew about the second March 2nd call at the time Plaintiffs' filed the Amended Complaint in June 2023, but did not offer a reasonable justification for failing to seek leave to add a DNC claim until December 2023. (Doc. 54 at 655-56.) On April 15, 2024, Plaintiffs filed a motion for class certification. (Doc. 57.) Plaintiffs attached a "Supplemental Expert Declaration of Aaron Woolfson" in support. (Doc. 57-4.) The motion for class certification is fully briefed. (Docs. 65, 70.)

On April 15, 2024, CCM filed a motion for summary judgment, which is fully briefed. (Docs. 58, 73, 80.)

On April 29, 2024, CCM filed a motion to strike the supplemental Woolfson declaration, arguing the declaration untimely offers new opinions on the prerecorded call claim that are unrelated to the original declaration, and these opinions were not disclosed in compliance with the Court's case management deadlines. (Doc. 63 at 1729-38.) Alternatively, CCM argues the supplemental declaration should be excluded as unreliable. (Doc. 63 at 1738-43.) The motion to strike is also fully briefed. (Docs. 71, 78.)

8

## II.     LAW AND ANALYSIS

### A.     Standard of Review

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of showing that no genuine issues of material fact exist." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849–50 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Queen v. City of Bowling Green, Ky.*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted). On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005). A party asserting or disputing a fact must cite evidence in the record or show the record establishes either the absence or the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c) & (e). Rule 56 further provides "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also St. v. J.C. Bradford & Co.*, 886 F.2d

9

1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation and citation omitted). The Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Id.*

**B.     Analysis**

Congress enacted the TCPA in response to "public outrage over abusive telephone marketing practices." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 341 (6th Cir. 2023). The statute prohibits making any call, to any cellular telephone number, "using any automatic telephone dialing system or an artificial or prerecorded voice," absent an emergency or without the "called party's" "prior express consent." 47 U.S.C. § 227(b). Plaintiffs allege CCM violated this section "by making calls . . . to the cellular telephone numbers of Plaintiffs and members of the Class delivering pre-recorded messages." (Doc. 38 ¶ 62.)

In its summary judgment motion, CCM argues: (1) Plaintiffs cannot genuinely demonstrate the March 8th call was a "prerecorded call" because evidence demonstrates it was a live call; (2) Plaintiffs have not pled, and cannot prove, the March 2nd call was made with an artificial or prerecorded voice; and (3) Plaintiffs cannot show CCM willfully and knowingly violated the TCPA because the calls to the 657 Number were intended for someone else. (Doc.

10

58-1 at 1468-70.) Plaintiffs respond to each argument. (*See* Doc. 73 at 4407-20.) The Court will address them in turn.

1. **The March 8th Call**

As to the March 8th call, Plaintiffs concede CCM "provided evidence that during the March 8, 2022 call to Plaintiffs, a live agent must have come on the line." (Doc. 73 at 4411 n.3.) Summary judgment is therefore granted with respect to the March 8th call.

2. **The March 2nd Call**

Plaintiffs may not expand their claims in opposition to summary judgment. *See Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 162 (2020) (plaintiff was precluded from raising new claim at summary judgment where she failed to raise claim in complaint and failed to adequately request leave to amend); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (plaintiff could not expand claims to assert new theories in response to summary judgment or on appeal). "[I]f the plaintiff raises the new claims for the first time in the summary-judgment briefing, it generally subjects a defendant to unfair surprise, because the defendant has no opportunity to investigate the claim during discovery." *Davis*, 945 F.3d at 496 (quotations omitted); *see also Lally v. BP Prods. N. Am., Inc.*, 615 F. Supp. 2d 654, 659 (N.D. Ohio 2009) (plaintiffs could not expand scope of subject property in their opposition to summary judgment motion where defendant did not have opportunity to do discovery on additional parcels); *Sutton v. Ohio Dep't of Rehab. & Corr.*, No. 3:21 CV 962, 2023 U.S. Dist. LEXIS 122820, at *13 n.4, 2023 WL 4564385, at *5 n.4 (N.D. Ohio July 17, 2023) (plaintiff's "use of her opposition brief to introduce new facts to support these claims falls afoul of the accepted standard of fairness").

Those plaintiffs "who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing." *Davis*, 945 F.3d at 496 (citations omitted); *see also Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (affirming district court's refusal to consider claim first raised at summary judgment when new claim had not been pled, nothing in complaint put defendants on notice, and plaintiff had information for claim when she filed complaint but did not include it or seek leave to amend).

Here, Plaintiffs oppose summary judgment by arguing CCM has not established "the March 2, 2022 call was *not* prerecorded as a matter of law." (Doc. 73 at 4415 (emphasis in original).) Plaintiffs assert the call time of 19 seconds means the 17-second example message CCM produced in discovery could have played, and the IVR path on the call record means CCM "can't say a prerecorded message didn't play." (Doc. 73 at 4407, 4411-13, 4416.)

But the Amended Complaint does not allege the March 2nd call was made using a prerecorded voice. For the March 8th call, Plaintiffs allege: "L.D. heard a pre-recorded message on the call"; she placed the call on speaker so her father could hear the message; and "[t]he prerecorded message talked about refinancing a mortgage." (Doc. 38 ¶¶ 27-29, 31.) In contrast, the sole allegation regarding the March 2nd call is: "Discovery has also revealed a call on March 2, 2022." (Doc. 38 ¶ 34.) Plaintiffs do not provide any additional information on whether Plaintiffs received the call, any details regarding the contents of any message, or whether a prerecorded message was left on an answering machine or voicemail. Even if Plaintiffs attempt to frame their claim "at a high level of generality" by suggesting the Amended Complaint is worded broadly enough to put CCM on notice that the March 2nd call violated the TCPA, such an

12

"expansive theory does not suffice at the motion-to-dismiss stage, let alone at the summary-judgment stage." *Davis*, 945 F.3d at 496 (citations omitted).

During discovery, Plaintiffs did not suggest the March 2nd call was made using a prerecorded voice or that a prerecorded voicemail message was left on their answering machine. Johnstone, L.D., and Loftus each confirmed at their depositions the March 8th call was the only alleged prerecorded call at issue. (*See* Doc. 80 at 4733-34.) Plaintiffs' written discovery responses also did not provide any information about the March 2nd call or suggest they believed the call was made using a prerecorded or artificial voice. (*See id.*)

Furthermore, on January 21, 2024, class discovery closed, and on March 4, 2024, expert discovery closed. (January 4, 2024 Order; March 15, 2024 Order.) Plaintiffs did not plead the March 2, 2022 call was prerecorded in the Amended Complaint. Allowing Plaintiffs to proceed on this claim would deprive CCM of any opportunity to investigate the claim during discovery. *Davis*, 945 F.3d at 496. Additionally, alleging CCM left a prerecorded message on an answering machine is a different theory of liability than alleging CCM made a call that resulted in an abandoned call message playing on an answered call, which puts different statutory frameworks at issue for defenses available to CCM. (*See* Doc. 80 at 4740.) Allowing Plaintiffs to expand their prerecorded claim at this stage would prejudice CCM.

Plaintiffs failed to first move to amend their pleadings before raising the new claims in opposition to summary judgment. The deadline to amend the pleadings without leave of Court was February 15, 2023. (Doc. 23.) Plaintiffs filed a motion for leave to amend the initial complaint on April 6, 2023, and again on December 22, 2023 (Docs. 34, 44.) Significantly, on December 4, 2023, CCM produced the spreadsheet containing the IVR Path data for the March 2, 2022 call. (Doc. 46-1 ¶ 9; Doc. 46-6; Doc. 80-1 ¶ 10; Doc. 58-14 at 1685-90.) On December

13

22, 2023, Plaintiffs moved for leave to file a Second Amended Complaint.  (Doc. 44.)  But their proposed Second Amended Complaint did not contain any new allegations that the March 2, 2022 call was made using a prerecorded voice or that a prerecorded message was left on Plaintiffs' voicemail.  (Doc. 80 at 4735, 4741; Doc. 44-2 ¶ 43.)

Plaintiffs are familiar with the procedural mechanism for adding claims or factual allegations.  They had all relevant evidence prior to the close of discovery but failed to seek leave to amend to add allegations about the March 2nd call.  *Stoutamire v. Schmalz*, No. 1:16CV2840, 2022 U.S. Dist. LEXIS 16322, at *15-17, 2022 WL 263021, at *6 (N.D. Ohio Jan. 28, 2022) (plaintiff could not make new allegations in opposition to summary judgment where he did not seek leave to amend; plaintiff "sought leave to amend twice in this case so undeniably he is familiar with the procedural mechanism for adding claims or factual allegations"); *Tajleed-Steven: Hardy Fam. of Hardy Tr./Est. v. Navy Fed. Credit Union*, No. 3:23-CV-094-RGJ, 2024 U.S. Dist. LEXIS 185337, at *19-20, 2024 WL 4468655, at *7-8 (W.D. Ky. Oct. 10, 2024) (plaintiff could not raise new claims in summary judgment briefing; deadline to amend had expired, and plaintiff could not show excusable neglect where he had all relevant evidence since close of discovery).  For these reasons, Plaintiffs are precluded from raising new claims or allegations regarding the March 2nd call in opposition to summary judgment.

Even if Plaintiffs could proceed on their allegations and theories about the March 2nd call, they have not established a genuine issue of material fact.  On summary judgment, if the moving party does not bear the burden of proof at trial, the moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show there is an absence of evidence to support the nonmoving party's case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *see also Lindsey v. Whirpool*

*Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008); *Great W. Cas. Co. v. Maric Transp., Inc.*, 628 F. Supp. 3d 754, 763 (N.D. Ohio 2022).

"The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel*, 87 F.3d at 799 (citing *Celotex Corp.*, 477 U.S. at 322). "The plaintiff must present more than a mere scintilla of evidence in support of her position[.]" *Id.* (citing *Anderson*, 477 U.S. at 252). "'[T]here must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252). Such evidence must be significantly probative. *Anderson*, 477 U.S. at 249-50.

Plaintiffs assert CCM has not met its burden to demonstrate "the March 2, 2022 call was *not* prerecorded." (Doc. 73 at 4415 (emphasis in original).) Plaintiffs argue CCM "cannot even say one way or the other whether a prerecorded message played and has admitted that its records at least demonstrate that it is *possible* a prerecorded message played." (*Id.*) To Plaintiffs, this shows a genuine dispute of material fact. (*Id.*) However, Plaintiffs misconstrue the burden on summary judgment. CCM need not disprove Plaintiffs' case; they need only show there is an absence of evidence to support Plaintiffs' case. CCM has done so. The burden then shifts back to Plaintiffs to show a genuine dispute of material fact with significant probative evidence. *Queen*, 956 F.3d at 898; *Anderson*, 477 U.S. at 249-50. Plaintiffs have not met their burden.

Plaintiffs must show, by a preponderance of the evidence: (1) a call was made by CCM; (2) CCM used an artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) CCM did not have Plaintiffs' prior express consent. *See* 47 U.S.C. § 227(b)(1)(A). As discussed above, Plaintiffs' sole relevant allegation in the Amended Complaint is that "[d]iscovery has also revealed a call on March 2, 2022." (Doc. 38 ¶ 34.)

15

Plaintiffs did not produce any evidence about the March 2nd call, let alone significant probative evidence to establish CCM used an artificial or prerecorded voice. In fact, in discovery, Plaintiffs produced a Verizon phone bill for the 657 Number, and the only phone call identified is the March 8th call. (Doc. 58-2 ¶ 16; Doc. 58-13 (redactions in original).)

Instead, Plaintiffs rely on the existence of an IVR path on the call record for the March 2nd call. (Doc. 73 at 4415-16.) Plaintiffs argue no one from CCM or Five9 "has been able to say that this IVR Path indicates that a prerecorded message did not play." (*Id.* at 4412.) Plaintiffs point to deposition testimony where CCM stated it was "possible" a prerecorded message played given the IVR data. (Doc. 73 at 4413; Doc. 73-5 at 4489-90.) However, CCM asserts the IVR path record is inconclusive and suggests it merely indicates the system updated the contact record. (Doc. 58-1 at 1477; Doc. 58-14 at 1682-88.) The only other "evidence" Plaintiffs rely on is CCM's example abandoned call messages, asserting the 19-second call time for the March 2nd call was "enough time for a prerecorded message such as the 17-second example produced in discovery to play in full."[5] (Doc. 73 at 4416.) That the IVR path indicates a prerecorded message could have played and that a sample message almost matches the actual call time is not significant probative evidence.

Even with the inferences in Plaintiffs' favor, the absence of evidence does not create a genuine dispute of material fact. Plaintiffs have not set forth specific facts showing the March 2nd call was made using a prerecorded voice. This is not sufficient to defeat Defendant's summary judgment motion. *See Queen*, 956 F.3d at 898; *Anderson*, 477 U.S. at 249-50; *see also Fluker v. Ally Fin. Inc.*, No. 22-CV-12536, 2023 U.S. Dist. LEXIS 227644, at *5-6, 2023 WL

---

[5] Plaintiffs also do not explain their basis for asserting why CCM's abandoned call message, which CCM plays on live calls, would have played on an unanswered call that went to an answering machine.

16

8881154, at *3 (E.D. Mich. Dec. 21, 2023) (dismissing TCPA claim where plaintiff did not personally listen to phone calls at issue since he was incarcerated, so he could not plausibly establish defendant used an artificial or prerecorded voice); *Wallack v. Mercantile Adjustments Bureau, Inc.*, No. 14-10387, 2014 U.S. Dist. LEXIS 53833, at *5, 2014 WL 1515852, at *2 (E.D. Mich. Apr. 18, 2014) (collecting TCPA cases requiring a plausible showing of "circumstances that would support the inference that these calls were placed with . . . an artificial or prerecorded voice"). Based on the record, a reasonable jury could not find for Plaintiffs. For these reasons, Defendant's motion for summary judgment is granted.

### 3. Willful or Knowing Violations of the TCPA

Finally, even if Plaintiffs could proceed on the March 2nd prerecorded call claim and could meet their summary judgment burden, Plaintiffs cannot establish that CCM willfully or knowingly violated the TCPA. Under the TCPA, the court has discretion to award treble damages "[i]f the court finds the defendant willfully or knowingly violated this subsection . . . ." 47 U.S.C. § 227(b)(3). In the Amended Complaint, Plaintiffs allege, "If Defendant's conduct is found to be knowing or willful, the Plaintiffs and members of the Class are entitled to an award of up to treble damages." (Doc. 38 ¶ 64.) Plaintiffs argue CCM "has not shown as a matter of law that its violations of the TCPA were not willful or knowing." (Doc. 73 at 4420.)

CCM provided the following evidence: it received a lead that Julie Johnson was interested in refinancing her mortgage; her telephone number was the 657 Number; CCM called the 657 number intending to contact Julie Johnson, but CCM called Plaintiffs by mistake. (Doc. 58-1 at 1477; Doc. 58-9 at 1564; Doc. 58-14 ¶¶ 4, 5; Doc. 80 at 4745.) Plaintiffs have not disputed this evidence or put forth any supporting evidence that CCM's conduct was willful or knowing. (Doc. 73 at 4420-21.)

Plaintiffs cannot sustain their request for treble damages under the TCPA where Plaintiffs have not shown CCM knew it was calling the wrong number but continued to call Plaintiffs anyway.  *Compare Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66, 77 (D. Mass. 2023) (finding treble damages inappropriate were parties agreed defendant believed it had plaintiff's express written consent to contact her when it made the calls), *with Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 896-97 (E.D. Mich. 2012) (treble damages appropriate where plaintiff placed defendants on notice they were calling wrong number, defendants failed to identify additional accounts wrongly associated with plaintiff's number, and defendants continued calling plaintiff's cell phone); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 657 (N.D.W. Va. 2014) (treble damages appropriate where defendant knew it was calling wrong person but persisted in calling); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1227 (S.D. Cal. 2014) (denying motion to dismiss treble damages claim where plaintiff alleged defendant continued to call plaintiff after being informed it was calling the wrong number). Even if Plaintiffs could survive summary judgment, treble damages are not appropriate.

### III.  CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment (Doc. 58) is GRANTED.  Plaintiffs' Motion for Class Certification (Doc. 57) and Defendant's Motion to Strike or Exclude Plaintiffs' Supplemental Expert Declaration (Doc. 63) are DENIED as moot.

**IT IS SO ORDERED.**

**Date**:  January 14, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

18